DONALD RUSSELL, Circuit Judge:
 

 This case of first impression requires us to interpret the Bankruptcy Reform Act’s (hereafter the Act) treatment of taxes withheld by a bankrupt employer from its5 employees’ wages, but never paid by the bankruptcy estate to the Internal Revenue Service. The question is whether, as the government argued, these taxes are payable as a first priority administrative expense out of the bankruptcy estate, or merely as a sixth priority tax liability, as the bankruptcy trustee contended. For the reasons stated below, we find that the taxes in question, as well as the penalties and interest thereon, are first priority expenses.
 

 I.
 

 On 26 February 1981, Friendship College, the debtor below and a South Carolina non-profit organization, filed for Chapter 11 reorganization. Following the filing, in the Bankruptcy Court for the Western District of North Carolina, the debtor was left in possession to act as bankruptcy trustee, and the bankruptcy estate was created from all the debtor’s assets at the time of filing.
 

 
 *431
 
 During the reorganization, Friendship College continued to pay wages to its employees, and to withhold the required amounts of FICA and income tax from its employees’ paychecks. It neither paid the withheld amounts to the government as it should have, nor did it pay its own employer’s share of FICA. The government subsequently assessed the bankruptcy estate for the unpaid taxes, and for penalties, and interest thereon.
 

 By 15 December 1981, when it was obvious that Friendship College’s Chapter 11 reorganization was not effective, the bankruptcy court appointed a trustee in bankruptcy to supervise the liquidation of the estate, and on 7 January 1983 approved a liquidation plan. The government filed a claim for the taxes due from the reorganization period, and contended that the taxes, penalties, and interest were payable under the first priority category, “administrative expenses,” §§ 507(a)(1) and 503(b)(l)(B)(i) of the
 
 Bankruptcy Code,
 
 11 U.S.C. §§ 507(a)(1) and 503(b)(l)(B)(i). First priority expenses are to be paid from the bankruptcy estate before all other unsecured claims. The trustee contended that the claims were payable only under § 507(a)(6), the sixth category of claims, which includes most tax liabilities.
 

 The parties stipulated to this direct appeal from the May 9, 1983, order of the Bankruptcy Court, 34 B.R. 126, holding that the tax claims in question are not entitled to first priority status. The bankruptcy court held that the amounts due for the employer’s share of the FICA taxes are entitled to first priority status, but that the amounts withheld as the employees’ share of FICA and income taxes are entitled only to sixth priority status. It also held all interest on all tax amounts here in question to be entitled to no priority.
 

 II.
 

 The first issue on appeal is whether the taxes in question are to be considered first priority administrative expenses, not sixth priority expenses as found by the bankruptcy court. Under § 503(b)(1)(B)(i), administrative expenses include:
 

 any tax incurred by the estate, except a tax of a kind specified in § 507(a)(6) of this title.
 

 Section 507 gives the order of priority for claims and expenses of the bankruptcy estate. Section 507(a)(6)(C) is for taxes:
 

 required to be collected or withheld and for which the debtor is liable in whatever capacity.
 

 The government’s argument relied in large part on the difference between the phrases “for which the debtor is liable,” which implies pre-petition liabilities, and “incurred by the estate,” which necessarily means post-petition liabilities, since by definition there can be no bankruptcy estate until the petition in bankruptcy is filed. For the reasons stated below, we agree with the government.
 

 The bankruptcy court construed the language “incurred by the estate” to preclude inclusion of taxes withheld from wages paid by the estate, on the grounds that such taxes are
 
 incurred
 
 by the employees, not the estate. After looking at the statute’s language, the bankruptcy court divided the taxes claimed here into two categories, and treated the employer’s share of FICA taxes as having been “incurred by the estate,” and entitled to first priority treatment, but treated the amount withheld from wages as not “incurred by the estate,” or alternatively, as excepted from first priority treatment by § 507(a)(6). On appeal, the government contested only the finding as to the taxes withheld from the employees’ wages.
 

 As both sides agree, the old bankruptcy law would have made wages, and taxes withheld from wages earned and paid after the filing of the bankruptcy petition, a first priority claim. The current law became effective (in most respects) on 6 Nov. 1978, and most changes from the old act are explicitly discussed in the legislative history of the new Act.
 

 The language of the statute, we think, implies that the bankruptcy estate should pay the taxes here in question as first
 
 *432
 
 priority expenses, because the word “estate” implies post-petition liabilities. The Internal Revenue Code provides other support for this conclusion. The Code, at 26 U.S.C. § 3401, requires that the employer withhold taxes from employees’ wages, and at § 3403, makes the employer “liable for the payment of taxes required to be deducted and withheld.” Thus the Code itself treats taxes withheld from wages as a liability of the employer, not the employee, even though the word “incurred” is not used. Other courts have used the word “incurred” to refer to liability of the bankruptcy estate for payment of taxes withheld,
 
 see, e.g., Otte v. U.S.,
 
 419 U.S. 43, 95 S.Ct. 247, 42 L.Ed.2d 212 (1974).
 

 We also believe that the language of the statute here is sufficiently ambiguous to warrant consideration of the legislative history. In the 95th Congress, both the House and Senate Judiciary Committees reported versions of the Act which included provisions ensuring that wages paid by the estate and taxes thereon were first priority expenses. This result was confirmed by the various Judiciary and Finance Committee reports. Both houses passed the bills in 1978 in forms identical, with respect to the provision at issue here, to the versions which had been reported out of committee, and so which had been the subject of the Committee Reports. The versions passed by the House and Senate differed as between themselves, however. When reconciled informally after passage
 

 [1]
 

 ,
 
 the final version differed from either version passed.
 

 The legislative history of the
 
 joint
 
 compromise version of the bill, informally printed in the Congressional Record for each house, shows the intent of the members who worked out the compromise version. First, the
 
 Record
 
 notes that the compromise bill was intended to change
 
 only
 
 those sections about which the House and Senate had disagreed; here, the two original versions agreed. Moreover, later on in the
 
 Record,
 
 the sponsors of the bill in each house stated unequivocally that
 
 employers’ and employees’
 
 shares of employment taxes on wages earned and paid after the petition are to be treated as first priority administrative expenses. As adopted, § 503(b)(1)(B)(i) gives first priority administrative expense status to taxes “incurred by the estate, except a tax of a kind specified in § 507(A)(6).”
 

 As discussed above, the bankruptcy court’s “incurred by the estate” argument is overset by the legislative history. Section 507(A)(6)(c) also does not support the bankruptcy court. That section gives sixth priority to:
 

 taxes required to be collected or withheld and for which the debtor is liable in whatever capacity.
 

 Other sections of § 507(a)(6) give sixth priority to other types of taxes. All of these other sections, however, apply almost entirely, if not entirely, to pre-petition taxes. Thus the context of § (C) suggests that it too would apply only to pre-petition taxes, and since the estate is no longer a “debt- or,” the language of the section supports the government. If Congress had intended for the estate to be affected by that section, it would have used the word “estate,” as it did in § 503. Admittedly, here the post-petition bankruptcy estate was being administered by the debtor in possession acting as trustee, rather than by a trustee, but that was chance. The statute cannot have been intended to apply differently according to whether an appointed trustee, or the debtor in possession, was administering the estate during reorganization.
 

 III.
 

 The second issue is whether penalties assessed against the bankruptcy estate for its failure to pay taxes, and interest on the taxes in question, are similarly entitled to treatment as first priority expenses.
 

 The bankruptcy
 
 Code
 
 accords first priority treatment to penalties on taxes which are first priority administrative expenses,
 
 *433
 
 § 503(b)(1)(C). Our decision on the question of the taxes thus compels us to reverse the bankruptcy court as to the penalties also.
 

 Interest, on the other hand, is not mentioned by the
 
 Code,
 
 but we find no support anywhere for differentiation in the treatment of the tax and the interest thereon. Although the trustee argues that the .absence of a provision like § 503(b)(1)(C) precludes first priority treatment for interest, we are unconvinced. To treat interest inconsistently from the taxes and penalties, we would require proof that such different treatment was intended by the Code. Instead, the only indication we have one way or the other suggests that interest should be first priority,
 
 see,
 
 Report of the Senate Judiciary Committee, S.Rep. No. 95-989, 95th Cong., 2d. Sess. (1978), at 66,
 
 reprinted in,
 
 1978 U.S.Code Cong. & Admin.News, 5787, where it was stated that interest on first priority taxes should also receive first priority treatment. We therefore opt for consistency. The Code does allow us to do this by treating the interest as a general administrative expense under § 503.
 

 We therefore hold that the government is entitled as a first priority expense of the bankruptcy estate to full payment of the taxes claimed, the penalties for failure to pay them on time, and interest from the date that it accrued.
 
 [2]
 

 REVERSED AND REMANDED for entry of an order consistent with this opinion.
 

 [1]
 

 . There was no formal joint committee proceeding on the Act, and consequently no Joint Com-mittce Report.
 

 [2]
 

 . The interest was to be paid quarterly, however.