**In the Matter of PHARMADYNE LABORATORIES, INC., a Corporation of New Jersey, Debtor.**

**Bankruptcy No. 81–01803.**

United States Bankruptcy Court,
D. New Jersey.

Jan. 28, 1985.

---

**518**

Mary Anne Walker Collins, Kleinberg, Moroney, Masterson & Schacter, Millburn, N.J., for debtor.

Alfred Pierri, Matthew Magnone, Dist. Counsel, N.J., Newark, N.J., for IRS.

## OPINION

### and

### ORDER

D. JOSEPH DE VITO, Bankruptcy Judge.

On March 30, 1981, Pharmadyne Laboratories, Inc. filed a petition in bankruptcy under Chapter 11 of Title 11 of the U.S. Code. The debtor continued in the management and possession of its properties until October 2, 1981, when a trustee was appointed. On September 24, 1982, the Court confirmed a plan of reorganization providing for the orderly liquidation of the estate, pursuant to 11 U.S.C. § 1123[b][4].

The plan provides that all claims against the estate entitled to priority under 11 U.S.C. § 507[a][1] shall be paid in full from the proceeds of the assets of the estate. It further provides that all claims entitled to priority under 11 U.S.C. § 507[a][6] [1] shall be paid to the extent there are funds available for payment after the payment of the § 507[a][1] claims and the payment of claims entitled to priority under 11 U.S.C. § 507[a][3] and [4].

On August 21, 1984, Pharmadyne moved for an order: (1) denying (a) any right, or (b) priority status (under any subpart of § 507) to penalties and interest the Internal Revenue Service has imposed on an unsecured, prepetition tax debt of $176,368.34 and an unsecured, postpetition tax debt of $166,255.60; (2) establishing that part of the postpetition debt representing withholding and F.I.C.A. taxes has § 507[a][7] priority, rather than § 507[a][1] priority.

In the motion, Pharmadyne specifically requests the Court to rule that:

(1) that portion of Pharmadyne's postpetition debt representing "trust fund" taxes [2] constitutes a § 507[a][7] priority debt rather than a § 507[a][1] priority debt; [3]

(2) the I.R.S. was not entitled to impose a penalty for Pharmadyne's failure to pay the postpetition debt prior to the resolution of a matter involving the Generix Drug Corp.; [4]

---

**1.** The provisions that had been contained in section 507[a][6] when the plan was confirmed are now contained in 11 U.S.C. § 507[a][7].

**2.** "Trust fund" taxes are income taxes which an employer is required to withhold from the pay of his employees, and the employees' share of social security taxes. 124 Cong.Rec. S17,429 (daily ed. Oct. 6, 1978).

**3.** The I.R.S. concedes that this debt was paid on June 14, 1984, but does not challenge the continued vitality of the priority issue raised by Pharmadyne.

**4.** There is some ambiguity as to whether Pharmadyne requests a determination that no penalty was properly imposed prior to confirmation of the plan, or that no penalty was properly

(3) none of the penalties are payable pursuant to § 726[a][1];

(4) the I.R.S. is not entitled to *pre*petition interest on Pharmadyne's (prepetition) debt;

(5) the I.R.S. is not entitled to *post*petition interest on Pharmadyne's *pre*petition debt;

(6) the I.R.S. is not entitled to (postpetition) interest on Pharmadyne's *post*petition debt.

The I.R.S. opposed the motion. The trustee neither filed papers nor appeared on this motion.

█ The Court first considers whether postpetition trust fund taxes fall within § 507[a][1] or § 507[a][7]; specifically, whether a postpetition trust fund tax is a "tax required to be collected or withheld and for which the debtor is liable in any capacity," within the meaning of § 507[a][7][C]. If the taxes do not fall within the quoted language (subpart [C] of § 507[a][7] in its entirety), they are necessarily § 503 administrative expenses, which fall within § 507[a][1].[5]

The I.R.S., relying on *U.S. v. Friendship College, Inc. (In re Friendship College)*, 737 F.2d 430 (4th Cir.1984), argues that the legislative history of § 507 makes it clear that section 507[a][7][C] was not intended to apply to postpetition trust fund taxes. The Court accepts the validity of that position.[6] The I.R.S. further argues that the Court should interpret § 507[a][7][C] in light of its legislative history.

Pharmadyne maintains that the language of § 507[a][7][C] is clear and explicit, and that such language is not qualified to exclude postpetition taxes. It argues further that, where the language of a statute is

---

imposed prior to resolution of the Generix dispute. The point heading of Point V of Pharmadyne's brief states: "UNDER THE SPECIAL CIRCUMSTANCES OF THE CASE AT BAR, PHARMADYNE SHOULD NOT BE ASSESSED POST–PETITION PENALTIES PRIOR TO THE ORDER OF CONFIRMATION OF THE PLAN OF REORGANIZATION." Nevertheless, the argument contained under that point heading relates to circumstances bearing not only upon the postpetition, pre-confirmation period, but upon the period between confirmation of the plan (September 24, 1982) and resolution of the Generix dispute (January 13, 1984) as well. The I.R.S. has addressed the propriety of imposing a penalty for the period beginning with the date the taxes were due and ending with the resolution of the Generix dispute.

5. Section 503[b] provides: "[T]here shall be allowed administrative expenses ... including— [1] ... [B] any tax—[i] incurred by the estate, except a tax of a kind specified in section 507[a][6] of this title [now § 507[a][7]...." Subparts [C] and [D] of § 507 are the only parts of § 507 wherein employment taxes are treated. Subpart [D] is explicitly limited in application to employment taxes incurred before the filing date of the bankruptcy petition. Postpetition trust fund taxes must, therefore, fall within either § 503 or § 507[a][7][C]. If they fall within § 503, they receive priority under § 507[a][1], which confers such priority to "administrative expenses allowed under § 503[b]."

6. *See* 124 Cong.Rec. S17,428 (daily ed. Oct. 6, 1978), which states: "Among the taxes which receives [sic] first priority, as defined in § 503, are the employees' and the employer's shares of employment taxes on wages earned and paid after the petition is filed." *Also see* 124 Cong. Rec. H11,113 (daily ed. Sept. 28, 1978), which states: "In the case of employment taxes relating to wages earned and paid after the petition, both the employees' shares and the employer's share will receive first priority as administration expenses of the estate."

The statements in the legislative history quoted above are inconsistent with the language of § 507[a][7][C] unless: (1) the "in whatever capacity" does not refer to the capacity of the debtor as debtor in possession; (2) the omission of any reference to time does not make the section applicable to all postpetition trust fund taxes. And, in fact, the "in whatever capacity" language and the omission of any reference to time appear to have been aimed at the liability of corporate officers responsible under the Internal Revenue Code for taxes withheld by their corporations. *See* 124 Cong.Rec. S17,429 (daily ed. Oct. 6, 1978), which states that the trust fund tax priority category:

includes the liability of a responsible officer under the Internal Revenue Code (section 6672) for income taxes or for the employees' share of social security taxes which that officer was responsible for withholding from the wages of employees and paying to the Treasury, although he himself was not the employer. This priority will operate when a person found to be a responsible officer has himself filed in title 11 and the priority will cover the debtor's responsible officer liability regardless of the age of the tax year to which the tax relates.

clear and explicit, a court may not look to extrinsic evidence of the statute's purpose in order to interpret it.

The issue thus presented is one of statutory construction, specifically, whether the Court can interpret the statute in light of extrinsic evidence of its purpose where the literal language of the statute is plain and clear. On that issue, the U.S. Supreme Court has stated:

> In the interpretation of statutes, the function of the courts is easily stated. It is to construe the language so as to give effect to the intent of Congress....
> There is, of course, no more persuasive evidence of the purpose of a statute than the words by which the legislature undertook to give expression to its wishes. Often these words are sufficient in and of themselves to determine the purpose of the legislation. In such cases we have followed their plain meaning. When that meaning has led to absurd or futile results, however, this Court has looked beyond the words to the purpose of the act. Frequently, however, even when the plain meaning did not produce absurd results but merely an unreasonable one 'plainly at variance with the policy of the legislation as a whole' this Court has followed that purpose, rather than the literal words. When aid to construction of the meaning of words, as used in the statute, is available, there certainly can be no 'rule of law' which forbids its use, however clear the words may appear on 'superficial examination.'

*U.S. v. American Trucking Association,* 310 U.S. 534, 542–544, 60 S.Ct. 1059, 1063, 84 L.Ed. 1345 (1940).

As the Fourth Circuit points out in *Friendship College,* a literal interpretation of § 507[a][7][C] would make the priority of such taxes depend on whether or not a trustee were appointed, since a debtor could only be liable for taxes covering the postpetition period if such debtor were a debtor in possession. As the purpose of § 507 is to regulate the likelihood of payment of certain classes of claims in accordance with policy decisions made by Congress, *see* 3 Collier on Bankruptcy ¶ 507.-02[1] (15th ed. 1984), to make the priority of trust fund taxes dependent upon whether, by chance, a trustee is appointed would be plainly at variance with the policy of the priority legislation as a whole. However clear the words of § 507[a][7][C] may appear on superficial examination, the Court finds that it should look to extrinsic evidence of the purpose of the legislation.[7] Relying on such evidence, consisting of the legislative history noted in footnote 6, the Court concludes that the postpetition trust fund taxes, rather than of a type described in § 507[a][7][C], are § 503[b] administrative expenses falling within § 507[a][1].

■ Turning to the question of when the I.R.S. was entitled to impose a penalty for Pharmadyne's failure to pay the postpetition debt, Pharmadyne, though conceding that § 503 permits the imposition of a penalty on an estate which does not pay administrative tax expenses,[8] argues that the presence of special circumstances prevent imposition prior to the resolution of a particular matter involving the Generix Drug Corp.

The special circumstances Pharmadyne cites are a lack of funds with which to pay the tax when it was specifically ordered to do so and a subsequent prohibition allegedly emanating from this Court against payment of the tax claim. Pharmadyne asserts that: (1) a January 8, 1982 opinion by this Court stated that I.R.S. claims were

---

7. The Court notes, but does not rely on the following U.S. Supreme Court statement interpreting the Bankruptcy Act of 1898:

> [W]ithholding taxes are, in full effect, part of the claims themselves and derive from and are carved out of the payment of those claims. We, therefore, fully agree with the Second Circuit's observation, 48 F.2d at 190: 'Conceptually the tax payments should be treated in

the same way as the wages from which they derive and of which they are a part.'
*Otte v. U.S.,* 419 U.S. 43, at 57, 95 S.Ct. 247 at 256, 42 L.Ed.2d 212 (1974).

8. Section 503[b][1][C] provides for the allowance of administrative expenses for "any fine, penalty, or reduction in credit relating to a tax" also allowed as an administrative expense.

not to be paid prior to the confirmation of a plan;[9] (2) this Court's September 24, 1982 order of confirmation led Pharmadyne to believe that the postpetition tax debt was not to be paid until the Court had resolved an additional matter involving the Generix Drug Corp.[10] Pharmadyne maintains that, in the foregoing circumstances, it would be inequitable for the Court to permit the imposition of the penalty. The Court surmises that Pharmadyne has raised this issue because of the possible ramifications it may have on the right of the I.R.S. to accrue interest. For that reason, the Court notes that a literal reading of the portions of the January 8, 1982 opinion and the September 24, 1982 order suggests that Pharmadyne was prohibited from paying the tax between January 8, 1982 and January 13, 1984, the date the I.R.S. states the Generix matter was resolved.

The Court finds that the mere fact of Pharmadyne's financial inability to pay the tax does not render imposition of the penalty inequitable, particularly since the trust fund taxes were specifically collected to be paid to the I.R.S., not to be used for any other purpose. The fact of the unavailability of the trust fund taxes is the result of Pharmadyne's own doing. The Court finds, however, that, in light of the Court's order of September 24, 1982 deferring payment of priority claims until resolution of the Generix Drug Corp. litigation, occur-

ring on January 13, 1984, it would be inequitable to permit imposition of a penalty for the taxpayer's failure to pay the tax. *See* Internal Revenue Code, section 6656 (1954 Code). Pharmadyne does not dispute the right of the I.R.S. to impose penalties for the taxpayer's failure to pay taxes following resolution of the Generix matter. Accordingly, the I.R.S. shall submit evidence as to the amount of the penalties imposable for the period commencing January 13, 1984.

■ In the event that penalties are calculable based upon the foregoing, the Court considers whether penalties due the I.R.S. are payable pursuant to § 726[a][1].[11] The I.R.S. concedes that penalties imposed on the prepetition debt are not payable under § 726[a][1], but asserts that penalties imposed on the postpetition debt are so payable. Pharmadyne's argument, which the Court rejects insofar as it relates to penalties imposed on the postpetition debt, is: (1) to be payable pursuant to § 726[a][1], a penalty must be of a kind described in § 507; (2) subpart [a][7][G] is the only provision in § 507 where the I.R.S. penalties might be described; (3) § 507[a][7][G] relates solely to penalties "in compensation for actual pecuniary loss;" (4) the penalties in question were not imposed in compensation for actual pecuniary loss.

---

**9.** The January 8, 1982 opinion states, at page 4, "... neither are any payments to be made prior to confirmation to I.R.S....."

**10.** Paragraph H of the September 24, 1982 order states:

The Debtor and Trustee shall prepare a statement of all priority claims required to be paid One Hundred (100%) Percent in full under the Plan of Reorganization referred to above as defined under said Plan and Sec. 507[a][3][4][5] and [6] as may be applicable under the provisions of the Bankruptcy Code. Upon agreement between the Debtor and Trustee as to those priority claims which shall be listed in said statement in accordance with setting forth the priority claimant, name and address, type of priority claim and amount, same shall be filed with the Clerk of the Court and the Trustee shall make payments thereof to all such priority creditors, except those that are objected to.

Paragraph K, however, states:

Anything to the contrary notwithstanding, until final determination of the amount and validity of the claim of Generix Drug Corp. referred to above shall have been determined by a final order of this Court, the Trustee shall withhold implementation of paragraph H, I and J of this order until the aforementioned determination of the status of the Generix Drug Corp. administrative claim by final order of this Court and subject to further order of this Court as circumstances shall require.

**11.** Section 726 provides:

[a] Except as provided in § 510 of this title, property of the estate shall be distributed—
[1] first, in payment of claims of the kind specified in, and in the order specified in, § 507 of this title.

As noted in footnote 5, § 507[a][1] lists as a first priority item administrative expenses of the estate. Section 503[b][1][C] ·provides that penalties relating to taxes which are administrative expenses pursuant to § 503[b][1][B] are themselves administrative expenses. Having determined that the postpetition taxes are administrative expenses, the Court finds that penalties on postpetition taxes are administrative expenses, payable pursuant to § 726[a][1].

■ Considering now whether the I.R.S. is entitled to prepetition interest on Pharmadyne's (prepetition) debt, Pharmadyne, in its brief, merely states, without legal support, that such interest should be denied. As § 502[b][2] provides that claims shall be allowed, except to the extent that they are for unmatured interest, the Court finds that such prepetition interest as was matured as of the filing date is allowed.

■ Turning to the issue of whether the I.R.S. is entitled to postpetition interest on Pharmadyne's prepetition debt, Pharmadyne argues that the general rule, found in 11 U.S.C. § 502[b], is that interest stops accruing on claims as of the date of the filing of the petition. The I.R.S. concedes that it is not entitled to such interest as accrued between the filing of the petition and the confirmation of the plan, but insists that § 1129[a][9][C] supports its right to postconfirmation interest on that debt; specifically, that § 1129 provides that governmental units with tax claims must be compensated for experiencing any delay between confirmation of a plan and the date the claims are actually paid. It further argues, without citing authority, that such compensation is to be governed by the statutory interest rate set pursuant to § 6601 of the Internal Revenue Code, title 26 of the U.S. Code. The Court rejects this argument.

Section 1129 provides, in relevant part, that:

[a] The court shall confirm a plan only if all of the following requirements are met: ...

■ Except to the extent that the holder of a particular claim has agreed to a different treatment of such claim, the plan provides that—...

[C] with respect to a claim of a kind specified in section 507[a][6] of this title, the holder of such claim will receive on account of such claim deferred cash payments, over a period not exceeding six years after the date of assessment of such claim, of a value, as of the effective date of the plan, equal to the allowed amount of such claim.

Section 1129[a][9][C] is inapplicable here on several grounds. First, that section does not bear upon how a plan is to be administered, but rather on how a plan must be drawn to be eligible for confirmation. The I.R.S. questions whether the plan is being administered properly where no postconfirmation interest is paid, not whether it was properly drafted and confirmed.

Second, § 1129[a][9][C] only bears upon claims which are to be paid in deferred cash payments. The plan filed by Pharmadyne does not provide for the deferment of payments to the I.R.S. As the I.R.S. has failed to show that postconfirmation interest on Pharmadyne's debt falls within an exception to the general rule against postpetition interest on prepetition debts, the Court finds for Pharmadyne on that issue.

■ Considering the question whether the I.R.S. is entitled to postpetition interest on the postpetition debt, the I.R.S., relying on the reasoning of the Fourth Circuit in *U.S. v. Friendship College, Inc.*, 737 F.2d 430 (1984), contends that such interest constitutes an administrative expense allowable under § 503.[12] Pharmadyne, relying on the reasoning of *In re Stack Steel and Supply Co.*, 28 Bankr. 151 (Bankr.W.D. Wash.1983), disputes that interest on the

---

**12.** Section 503[b], which lists administrative expenses which shall be allowed, makes no mention of interest on postpetition tax debts. The list contained in section 503 is, however, not exclusive. *See In re Ridgewood Sacramento, Inc.*, 20 Bankr. 443 (Bankr.E.D.Cal.1982).

postpetition debt constitutes an administrative expense.

In its opinion, the *Stack Steel* court, noting that the issue had spurred much discussion under the Bankruptcy Act of 1898 and that it had been debated by Congress before the passage of § 503, inferred from Congress' failure to include specific mention of interest on postpetition debts in § 503 that Congress intended not to accord such interest the status of an administrative expense.

The *Friendship College* appellate court decision explains that it would have been logical to treat the interest consistently with the debt it had been accrued on. The underlying rationale of that court is that Congress would have explicitly expressed a contrary view had it intended to reject such treatment.

The Court rejects Pharmadyne's position. Prior to the enactment of § 503, the U.S. Supreme Court stated that "In most situations, interest is considered ... an integral part of a continuing debt. Interest on a tax debt would seem to fit that description." *Bruning v. U.S.*, 376 U.S. 358, 360, 84 S.Ct. 906, 907, 11 L.Ed.2d 772 (1963). In light of that language, Congress might simply have concluded that explicit language denying administrative expense status to postpetition interest on administrative expense tax debts was superfluous. Rather than draw inferences from Congress' silence, the Court views the above noted rationale of the Supreme Court in *Bruning* as controlling.

By reason of all of the foregoing, the Court finds and rules that:

1. postpetition "trust fund" taxes are to be paid as administrative expenses pursuant to § 503[b], falling within § 507[a][1];

2. penalties on the debtor's postpetition debt are to be paid as an administrative expense pursuant to § 503[b][1][C]; said penalties, however, shall be imposed only for the period of time commencing with January 13, 1984;

3. prepetition interest on the debtor's prepetition debt is allowed pursuant to

§ 502[b][2], limited, however, to the amount which matured as of the date the debtor's petition was filed;

4. postpetition interest on the prepetition debt is disallowed pursuant to § 502[b][1];

5. postpetition interest on the debtor's postpetition debt is allowed as an administrative expense pursuant to § 503[b][1][B][i].

It is so ordered.