## In re GENERAL POLYMERICS CORPORATION, Debtor.

### Bankruptcy No. 5–81–01343.

United States Bankruptcy Court, D. Connecticut.

Oct. 31, 1985.

Charles H. Needle, Zeldes, Needle & Cooper, P.C., Bridgeport, Conn., for debtor.

Barry K. Stevens, Asst. U.S. Atty., Bridgeport, Conn., for U.S.

### MEMORANDUM OF DECISION AND ORDER

ALAN H.W. SHIFF, Bankruptcy Judge.

The debtor, General Polymerics Corporation, seeks confirmation of a third modifica-

tion to its Fourth Amended Plan of Reorganization, claiming that under Code § 1129(a)(9)(C), it is entitled to make deferred payments to the United States on a post-petition tax debt. The government opposes confirmation, contending that under Code § 1129(a)(9)(A), it is entitled to full payment on the effective date of the plan. In addition, the government seeks the dismissal of this Chapter 11 case. For the reasons set forth below, confirmation is denied, and this case is dismissed.

## BACKGROUND

The debtor is a manufacturer of acrylic sheet. The corporation filed a petition for reorganization under Chapter 11 of the Bankruptcy Code on December 14, 1981. Its Fourth Amended Plan of Reorganization was confirmed on November 26, 1984. Under the reorganization plan, as confirmed, the debtor was obligated to pay the post-petition tax claims of the United States in cash on the effective date of the plan.[1] The debtor has failed to pay that debt and now proposes to pay the government's post-petition tax claim with interest and penalties in $5,000 monthly installments, with the balance to be paid no later than 36 months after the date of confirmation of its modified plan.

## DISCUSSION

Under the statutory scheme of Code § 1129(a)(9), applicable to this proceeding, holders of claims specified in section 507(a)(1), which relates to administrative expenses under section 503(b), are entitled to be paid the full amount of their claim on the effective date of the plan so long as the claim is not a tax claim under Code § 507(a)(6).[2] *See* Code § 1129(a)(9)(A).

Holders of claims specified in section 507(a)(6), however, may be required to accept deferred payments over a period not to exceed six years in an amount, as of the effective date of the plan, equal to the allowed amount of their claim. *See* Code § 1129(a)(9)(C). The issue here, therefore, centers upon the construction of sections 503(b)(1)(B)(i) and 507(a)(6).

The debtor first argues that its post-petition tax obligation to the United States should be classified as a section 507(a)(6)(C) claim, so that the tax may be paid over a period of time. In support of that position, the debtor relies upon the language of section 503(b)(1)(B)(i) which includes, as an administrative expense, "(B) any tax—(i) incurred by the estate, except a tax *of a kind* specified in section 507(a)(6) of this Title." *Id.* (emphasis added). The debtor thus takes the position that its post petition tax obligations are "of a kind" of taxes within the section 507(a)(6)(C) category and, therefore, not an administrative expense entitled to first priority as an unsecured claim under section 507(a)(1).

The government, on the other hand, relies upon *United States v. Friendship College, Inc.,* 737 F.2d 430 (4th Cir.1984) and argues that the debtor's obligation is a post-petition tax debt and that to treat it as a sixth priority claim merely because it is of a kind that could be a pre-petition debt stretches section 503(b)(1)(B)(i) beyond its intended limits.

As the court in *Friendship College* held, the phrase "of a kind" as used in Code § 503(b)(1)(B) is not the operationally significant term for construing the relationship between section 503(b) and section 507(a)(6). Instead, the court adopted the

---

1. As written, The Fourth Amended Plan of Reorganization provided for full payment in cash of priority claims other than those under Code § 507(a)(6) on the effective date of the plan. The United States contends that it was not the debtor's intention in its Fourth Amended Plan to treat the government's post-petition tax claims as claims under (a)(6). The debtor does not dispute this contention. Rather, after the government filed the instant motion to dismiss, the debtor filed the instant motion for confirmation of a modified plan which would treat the

government's post-petition tax claim as a claim under (a)(6).

2. This proceeding is governed by the Code provisions operating prior to the amendments made to the Code by the Bankruptcy Amendments and Federal Judgeship Act of 1984, Pub.L. No. 98–353. Code § 507(a)(6) is now numbered (a)(7). The 1984 amendment made no change in the text of this provision.

government's position and construed taxes "for which the debtor is liable" under section 507(a)(6)(C) to mean pre-petition tax liabilities as distinct from taxes "incurred by the estate" under section 503(b)(1)(B)(i) which "necessarily means post-petition liabilities, since by definition there can be no bankruptcy estate until the petition is filed." *United States v. Friendship College, Inc., supra,* 731 F.2d at 431. The court accordingly held that claims based upon post-petition withholding taxes are entitled to an administrative priority under section 503(b)(1)(B).

In other cases where debtors have advanced similar arguments, the results have been the same. *See In re W.J. Jackson Mfg. Co.,* 50 B.R. 506, 509–10 (Bankr.E.D. Tenn.1985); *In re St. Louis Freight Lines, Inc.,* 45 B.R. 546 (Bankr.E.D.Mich.1984); *In re EMC Industries, Inc.,* 27 B.R. 696 (Bankr.D.S.C.1983) (taxes due South Carolina Tax Commission). *See also In re Westholt Mfg., Inc.,* 20 B.R. 368, 370–1 (Bankr.D.Kans.1982), *aff'd sub nom. United States v. Redmond,* 36 B.R. 932 (Bankr. D.Kans.1984). *Accord In re Davidson Lumber Co.,* 47 B.R. 597 (Bankr.S.D.Fla. 1985); *In re Scrap Disposal, Inc.,* 24 B.R. 178 (Bankr.S.D.Cal.1982), *aff'd on other grounds,* 38 B.R. 765 (Bankr.B.A.P. 9th Cir.1984).

The debtor argues that the absence of a pre-petition limitation in Code § 507(a)(6)(C) is a significant indication of congressional intent when compared with the limitations to be found in subsections (a)(6)(A)(i) and (ii), and (a)(6)(B). I disagree. As the court concluded in *Friendship College, Inc., supra,* 37 F.2d at 432:

> Other sections of § 507(a)(6) give sixth priority to other types of taxes. All of these other sections, however, apply almost entirely, if not entirely, to pre-petition taxes. Thus the context of § (C) suggests that it too would apply only to pre-petition taxes, and since the estate is no longer a "debtor," the language of the section supports the government. If Congress had intended for the estate to be affected by that section, it would have

used the word "estate," as it did in § 503.

The ambiguity in the statutes upon which the debtor has sought to depend has been recognized in commentary. This commentary has also rejected the debtor's analysis. The prevailing view is that all that was meant by the reference to section 507(a)(6) in section 503(b)(1)(B)(i) is that a pre-petition tax claim which remains unpaid after a debtor's petition is not, for that reason, given administrative expense status under section 503(b)(1)(B)(i). *See* 3 Collier on Bankruptcy ¶ 503.04[b] at 503–25–6 (15th ed. 1984). *See also In re St. Louis Freight Lines, Inc., supra,* 45 B.R. 546, 549 n. 5.

The debtor also contends that while Code § 503(b)(1)(C) grants an administrative priority to "any fine, penalty or reduction in credit relating to a tax of a kind specified in subparagraph (B) of this paragraph," subparagraph (C) contains no mention of interest. Relying upon this absence of any reference to interest in subparagraph (C), the debtor argues that even if taxes and penalties are administrative expenses, the claim for interest should not be allowed that priority.

Although three courts provide some support of this position, *see Matter of Lumara Foods of America, Inc.,* 50 B.R. 809 (Bankr.N.D.Ohio 1985); *In re H & C Enterprises,* 35 B.R. 352 (Bankr.D.Idaho 1983); *In re Stack Steel & Supply Co.,* 28 B.R. 151 (Bankr.W.D.Wash.1983), I am more persuaded by the decisions which held that claims for interest under section 503(b)(1)(C) are entitled to the same priority as the underlying administrative tax claims and related penalties. *See United States v. Friendship College, Inc., supra,* 737 F.2d at 433; *In re Thompson* 85–1 U.S. Tax Cas. (CCH) ¶ 9243 (Bankr.N.D.Ohio 1984); *In re Razorback Ready-Mix Concrete Co.,* 45 B.R. 917 (Bankr.E.D.Ark. 1984).

As the *Friendship College* court concluded after analyzing the applicable legislative history, *supra,* 737 F.2d at 433, the one discussion in the legislative history of Code

§ 503(b) concerning the priority to be accorded interest on administrative tax claims states that "interest on tax liabilities and certain tax penalties incurred by the trustee are also included in this first priority." Sen.R. 95–989, 2d Sess. (1978) at 66, *reprinted in,* 1978 U.S.Code Cong. & Admin.News 5787, 5852. The court therefore concluded "the only indication we have one way or the other suggests that interest should be first priority." *United States v. Friendship College, Inc., supra,* 737 F.2d at 433. Moreover, holding interest on these post-petition tax claims to be entitled to administrative priority ensures that the interest on these claims receives a treatment consistent with the obligations to which the interest relates. *Id.* at 433; *In re Thompson, supra,* 85 U.S.Tax Cas. (CCH) ¶ 9243 at 87,509.

The debtor finally argues that even if the amounts claimed are owed and payable as administrative expenses, acceptance of its proposed third modification to its Fourth Amended Plan of Reorganization is within this court's equitable powers. The debtor thus urges the court to exercise its equitable power and confirm its proposed modification in order to give the debtor a meaningful opportunity to rehabilitate.

The debtor's reliance upon the equity powers of the court to relieve it of its obligations under the Bankruptcy Code is misplaced. While it is true that "the equity powers of the bankruptcy court play an important part in the administration of bankrupt estates in countless situations in which the judge is required to deal with particular, individualized problems," *Butner v. United States,* 440 U.S. 48, 55–56, 99 S.Ct. 914, 918, 59 L.Ed.2d 136 (1978), the role of equity is to supplement the express provisions of the Code and to further its general purposes. Equity does not replace statutory provisions as the debtor seems to suggest. To the contrary, as the maxim goes, "equity follows the law." *See In re Burley,* 11 B.R. 369, 373 (Bankr.C.D.Cal. 1981), *rev'd on other grounds,* 27 B.R. 603 (C.D.Cal.1982), *rev'd,* 738 F.2d 981 (9th Cir. 1984).

## CONCLUSION

For the foregoing reasons, it is ordered that the debtor's third modification to its Fourth Amended Plan of Reorganization is not confirmed, and it is further ordered that the United States' motion to dismiss is granted, and judgment may enter accordingly.