## In re GOULD & EBERHARDT GEAR MACHINERY CORPORATION, Debtor.

### Bankruptcy No. 4–82–00658–G.

United States Bankruptcy Court, D. Massachusetts.

Feb. 12, 1987.

Jack Wolfson, Wolfson, Dodson, Keenan & Cotton, Worcester, Mass., for debtor.

John Sigel, Hale & Dorr, Boston, Mass., for trustee.

Donald R. Lassman, Cambridge, Mass., for Commissioner of Revenue.

## OPINION

JAMES F. QUEENAN, Jr., Bankruptcy Judge.

Gould & Eberhardt Gear Machinery Corporation (the "Debtor") commenced this Chapter 11 proceeding over four years ago as the result of financial difficulties caused primarily by the insolvency of a substantial customer. The Debtor has incurred operational difficulties during the Chapter 11 proceeding, causing defaults in its postfiling tax obligations. These defaults largely precipitated the appointment of a trustee, William Gabovitch (the "Trustee"). The Debtor is now making a profit and has filed a plan of reorganization. Confirmation of the plan has been delayed pending a resolution of claims for taxes which accrued during the Chapter 11 proceeding. The plan proposes deferred payment of all tax claims, including postfiling claims, without payment of penalties or interest. The taxing authorities do not consent to this treatment.

The Internal Revenue Service has filed claims for post-filing taxes exceeding $292,000, which includes over $66,000 in interest and over $46,000 in penalties. The Department of Revenue for the Commonwealth of Massachusetts has filed claims for postfiling taxes of more than $142,000; this claim also includes substantial interest and penalties. The Internal Revenue Service claim

involves payroll taxes (withholding taxes and so-called "FICA" and "FUTA" taxes). The Commonwealth's claim is for both payroll taxes and corporate excise taxes. The Debtor and the Trustee have both filed objections to these claims.

Some of the Commonwealth's claims are disputed on grounds not now before the Court, and apparently, as to those other grounds, are subject to resolution by the parties. The present controversy concerns the priority status of the claims of the two taxing authorities for taxes and penalties accrued after the filing. Also at issue is the allowance and priority of interest claimed on postfiling taxes.

## I. *Taxes and Penalties*

The Debtor asserts that even though these taxes (and the penalties thereon) have been incurred after the Chapter 11 filing, they are nevertheless entitled only to a seventh priority under Section 507(a)(7) of the Bankruptcy Code (11 U.S.C. § 101 *et seq.*) rather than a first priority as administrative expenses allowed under Section 503(b)(1)(B) and (C).[1] The Debtor relies upon the exclusion in § 503(b)(1)(B) of "a tax of a kind specified in section 507(a)(7) of this title." It argues that § 507(a)(7)(C),[2] unlike the other subparagraphs of § 507(a)(7), is not by its terms limited to prefiling taxes. The Debtor also

points to the provisions of § 502(i)[3] and contends that § 502(i) requires that any tax entitled to priority under § 507(a)(7) be treated as though it were a prepetition tax regardless of whether it arose before or after the filing.

■ These sections of the Bankruptcy Code are not models of clarity on the priority status of taxes incurred after a filing. The reference in § 503(b)(1)(B) to § 507(a)(7) taxes, taken together with the provisions of § 502(i), form a jumbled priority scheme which seems to defy logic. The reference in § 503(b)(1)(B) to taxes of "a kind" specified in § 507(a)(7) would not be as troublesome if all of the taxes listed in § 507(a)(7) were expressly prepetition taxes. We conclude, however, that the reference is an example of drafting overkill, an unnecessary exclusion of prepetition taxes from the sweep of § 503(b)(1)(B). Most of the § 507(a)(7) taxes are expressly prepetition, so that the reference in § 503(b)(1)(B) to § 507(a)(7) in its entirety is unnecessary. The absence of a prepetition time limitation in § 507(a)(7)(C) (as to claims for withholding and collection taxes) appears to be an oversight in light of the grouping with other prepetition taxes. The important phrase in § 503(b)(1)(B) is "taxes incurred by the estate." This language expressed a clear intention to make postpetition taxes first priority claims. We are not impressed by the argument that taxes which are with-

---

1. Section 503(b)(1)(B) and (C) read as follows:
 (b) After notice and a hearing, there shall be allowed administrative expenses, other than claims allowed under section 502(f) of this title, including—

 . . . . .

 (B) any tax—
 (i) incurred by the estate, except a tax of a kind specified in section 507(a)(7) of this title; or
 (ii) attributable to an excessive allowance of a tentative carryback adjustment that the estate received,s whether the taxable year to which such adjustment relate ended before or after the commencement of the case; and
 (C) any fine, penalty, or reduction in credit relating to a tax of a kind specified in subparagraph (B) of this paragraph[.]

2. Section 507(a)(7)(C) reads:
 (a) The following expenses and claims have priority in the following order:

 . . .

 (7) Seventh, allowed unsecured claims of governmental units; only to the extent that such claims are for—
 . . .
 (C) a tax required to be collected or withheld and for which the debtor is liable in whatever capacity[.]

3. Section 502(i) reads:
 (i) A claim that does not arise until after the commencement of the case for a tax entitled to priority under section 507(a)(7) of this title shall be determined, and shall be allowed under subsection (a), (b), or (c) of this section, or disallowed under subsection (d) or (e) of this section, the same as if such claim had arisen before the date of the filing of the petition.

held or collected by the Debtor are incurred by third parties, so that § 503(b)(1)(B) should be taken as excluding postpetition withholding and collection taxes. The employer is liable for the payment of taxes which are required to be deducted and withheld. 26 U.S.C. § 3403.

 Legislative history supports these conclusions. Reports of the committees of both houses contain indications that wages paid by the estate and taxes thereon were intended to be first priority claims, and that the taxes listed in § 507(a)(7) were all intended to be prepetition taxes. *See* H.R. REP. NO. 595, 95th Cong., 1st Sess. 189–93, 355 (1977); S.REP. NO. 989, 95th Cong., 2d Sess. 66–67, 70–73 (1978), U.S. Code Cong. & Admin.News 1978, pp. 5787, 5852, 5853, 5856–5859, 6149–6153, 6310. *See also United States v. Friendship College, Inc. (In re Friendship College, Inc.),* 737 F.2d 430, 432 (4th Cir.1984) (discussion of legislative history emphasizing informal reconciliation of House and Senate to produce final version of bill).

We read § 502(i) as merely indicating that the allowance or disallowance of certain postpetition taxes should be governed by the same principles as those controlling the allowance of prepetition taxes having a seventh priority under § 507(a)(7), and not as giving all postpetition taxes the same priority as prepetition taxes. The legislative history indicates that Congress intended the interplay between § 507(a)(7) and § 502(i) to cover the situation where taxes are incurred on wages earned before the petition, but the wages are not actually paid to employees until after the petition. Congress wished these taxes to be treated as § 507(a)(7) taxes, not first priority taxes. *See* H.R.REP. NO. 595, *supra,* at 191–92; 3 COLLIER ON BANKRUPTCY ¶ 502.09 (L.King, ed., 15th ed. 1986). Thus, the effect of § 502(i) is to accord taxes priority based on when the events giving rise to the tax occur, rather than on when the dollars taxed are actually received by the person subject to the taxation. Such is not the situation here. The taxes at issue were incurred postpetition. Furthermore, § 502

in its entirety addresses the allowance of claims, not their priority. We are concerned here primarily with priority.

Because the penalties accorded priority in § 503(b)(1)(C) are, by the terms of the statute, those penalties related to the taxes given priority in § 503(b)(1)(B), it follows that the penalties here are also entitled to first priority. The parties have not argued that penalties are entitled to any different priority treatment than that of the underlying tax.

Almost all of the decisions dealing with these issues concur with our discussion of priority taxes and penalties. *See, e.g., United States v. Friendship College, Inc., supra; In re General Polymerics Corp.,* 54 B.R. 523 (Bankr.D.Conn.1985); *In re Pharmadyne Laboratories, Inc.,* 53 B.R. 517 (Bankr.D.N.J.1985); *In re Lumara Foods of America,* 50 B.R. 809 (Bankr.N. D.Ohio 1985); *Still v. United States (In re W.L. Jackson Manufacturing Co.),* 50 B.R. 506 (Bankr.E.D.Tenn.1985); *In re St. Louis Freight Lines, Inc.,* 45 B.R. 546 (Bankr.E. D.Mich.1984). *See also In re Sunset Enterprises, Inc.,* 49 B.R. 296 (Bankr.W.D.Va. 1985); *In re Davidson Lumber Co.,* 47 B.R. 597 (Bankr.S.D.Fla.1985); *United States v. Redmond,* 36 B.R. 932 (Bankr.D. Kan.1984). The only decision cited to us taking a contrary position is *In re New England Carpet Co., Inc.,* 26 B.R. 934 (Bankr.D.Vt.1983). That decision ignored legislative history, and its reasoning seems flawed. Finally, Collier agrees that the reference in § 503(b)(1)(B) to § 507(a)(7) was intended to make it clear that prepetition tax liabilities were not to be accorded a first priority, and not to have the effect of reducing postfiling taxes to a seventh priority. 3 *COLLIER ON BANKRUPTCY* ¶ 503.04[1][b] (L. King. ed., 15th ed. 1986).

## II. *Interest*

 The decisions are split as to the accrual of interest on postfiling taxes. Some disallow such interest altogether, or deny it first priority status. *See e.g., Flatau v. Jackson (In re Hirsch-Franklin Enterprises, Inc.),* 63 B.R. 864 (Bankr.M.D.

Ga.1986); *In re Lumara Foods of America*, 50 B.R. 809 (Bankr.N.D.Ohio 1985); *In re H & C Enterprises*, 35 B.R. 352 (Bankr. D.Idaho 1983); *In re Stack Steel Supply Co.*, 28 B.R. 151 (Bankr.W.D.Wash.1983). Other courts grant first priority status to interest on postfiling taxes. *See, e.g., United States v. Friendship College, Inc.*, 737 F.2d 430 (4th Cir.1984); *In re Pharmadyne Laboratories, Inc.*, 53 B.R. 517 (Bankr.D.N.J.1985); *In re Thompson*, 67 B.R. 1 (Bankr.N.D.Ohio 1984).

Section 503(b)(1)(B) includes both postfiling taxes and penalties as first priority claims, but it makes no mention of interest. The Senate bill contained a provision granting first priority to interest on postfiling taxes. S. 2266, 95th Cong., 2d Sess. § 503(b)(1)(B) (1978); *see* S.Rep. 989, 95th Cong., 2d Sess. 66 (1978). The House bill, however, made no mention of interest as an administrative expense. *See* H.R. 8200, 95th Cong., 1st Sess. § 503(b)(1) (1977). The Code, as enacted, adopted the House version in this respect. There is no discussion of the reasons for the change in statements made on the floor of Congress; both the House and the Senate merely state that the House approach to § 503(b)(1) was adopted "as modified" by the Senate bill. *See* 124 CONG.REC. H11094–95 (daily ed. Sept. 28, 1978) (statement of Rep. Edwards); 124 CONG.REC. S17411 (daily ed. Oct. 6, 1978) (statement of Sen. DeConcini). The logical conclusion from this would appear to be that Congress did not wish interest to accrue on postfiling taxes.

This intention would not be inconsistent with decisions of the Supreme Court on the subject. In *Nicholas v. United States*, 384 U.S. 678, 86 S.Ct. 1674, 16 L.Ed.2d 853 (1966), the court held that taxes which accrued during a chapter XI proceeding and became payable at a time following conversion of the case to a "straight" bankruptcy proceeding did not bear interest during the later bankruptcy proceeding. It is true that the analysis in *Nicholas* approves accrual of interest on taxes incurred during the chapter XI proceeding, an issue not directly before the *Nicholas* court. But *Nicholas* nevertheless is direct authority

for the proposition that interest does not continue to accrue during a subsequent liquidation proceeding. Congress could have wished to eliminate interest accrual altogether in order to avoid making fine distinctions based on different chapters. Attempting to pierce Congress's silence on this matter is chasing a will-o'-the-wisp. All we can infer from the statute and its legislative history is that Congress chose not to include interest on taxes in § 503(b)(1)(B).

In *United States v. Friendship College, Inc., supra*, which has been followed by several of the other decisions cited previously, the court used legislative history to come to the opposite result on the question of postfiling interest. The court noted that the only mention of postfiling interest in the legislative history was in a discussion in the Senate report, which favored a first priority claim for postpetition interest. The Court concluded from this that Congress had this same intention when it passed the law as finally enacted. *Friendship College*, 737 F.2d at 433. What the court ignored is that only the Senate bill, and not the House bill, contained express language allowing interest as a first priority claim, and that the House version won out. As discussed, we believe that this difference in the two bills is the crucial indication of legislative intent to exclude interest on postfiling taxes.

The taxing authorities here point out that although Congress did not expressly mention interest on taxes as an administrative expense, § 503 does not limit first priority administrative claims to the types of claims listed. *See* 11 U.S.C. § 102(3) ("includes" and "including" are not limiting language). We agree with this analysis; other claims may be allowed as administrative expenses, depending on the nature of the claims and the equities of the case before the Court. *Cf. In re Boston and Maine Corp.*, 719 F.2d 493, 495 (1st Cir.1983) (postpetition interest on claims may be allowed in certain circumstances, depending on the nature of the claim and the equities of the case). The IRS and the Commonwealth

advance reasons why the Court should exercise its equitable power to declare interest an appropriate administrative expense in this case. They argue that interest is an inherent part of debt, and that it is inconsistent to allow a priority claim for the underlying tax (and penalty), yet exclude interest. This analysis strikes us as simplistic. In bankruptcy, interest is not an inherent part of debt. Prefiling debt can accrue interest only to the date of filing, unless it is secured, and then only to the extent that principal and interest (plus expenses) do not exceed the value of the security interest. 11 U.S.C. §§ 502(b), 506(b). This principle has been basic in bankruptcy law for many years. *E.g., Sexton v. Dreyfus*, 219 U.S. 339, 31 S.Ct. 256, 55 L.Ed. 244 (1911). The decision in *Bruning v. United States*, 376 U.S. 358, 84 S.Ct. 906, 11 L.Ed.2d 772 (1964), is clearly distinguishable on this point because the court expressly distinguished the issue before it, the obligation of an individual debtor who had received his bankruptcy discharge to pay postfiling interest on a nondischargeable tax debt, from the obligation of an undischarged debtor to pay interest during the administration of a case in bankruptcy. *Bruning*, 376 U.S. at 362–63, 84 S.Ct. at 908–09.

The IRS and Commonwealth also contend that interest should be allowed here because otherwise the Debtor, by using the money which would have gone to pay the taxes in order to fund its reorganization, would in effect have an interest-free loan. This may seem true, but the Debtor is nevertheless suffering consequences because of its nonpayment of the taxes. It is forced by § 503(b)(1)(C) to pay the penalties incurred on the taxes as an administrative expense. Although the penalties assessed here are less than the accrued interest, the Debtor is not getting its "interest-free loan" without any strings attached. Congress provided for this situation by requiring that the Debtor pay the penalties resulting from its nonpayment of the tax.

Finally, we do not regard underlying policy considerations to weigh so heavily in favor of the taxing authorities that the statute's silence on interest, despite the legislative history, should be considered merely an expression of an intent that established policy considerations favoring postfiling interest should control. It is true that the full force of the considerations militating against postfiling interest is not present here. Postfiling interest on prefiling debt is generally prohibited because the delay in payment is caused by procedures required under bankruptcy law. Courts regard it as inequitable for anyone to gain an advantage or incur a loss because of a delay which is incident to the settlement of an estate. *Sexton v. Dreyfus*, 219 U.S. 339, 346, 31 S.Ct. 256, 258, 55 L.Ed. 244 (1911); *In re Boston and Maine Corp.*, 719 F.2d 493, 495 (1st Cir.1983). No delay in payment is required, however, with respect to taxes or other debts which accrue during a Chapter 11 proceeding. A Chapter 11 debtor is expected to pay postfiling debts, and his failure to do so may be cause for dismissal or conversion. *See* 11 U.S.C. § 1112. These considerations tip somewhat in favor of the taxing authorities.

On the other hand, there are equities here favoring denial of postfiling interest which are entirely independent of the causes for delay. It was undisputed at the hearing, and I so find, that liquidation of the Debtor would result in a distribution which will be insufficient to pay secured creditors in full, leaving nothing for priority creditors such as these taxing authorities. It was also undisputed at the hearing that the Debtor is unable to pay interest on postfiling taxes, in full, on top of the underlying tax and penalty. Also clear is that if the Court required the Debtor to make this payment as an incident to plan confirmation, the Debtor's inability to do so will prevent confirmation, causing termination of the Debtor's business, with the loss of employment and the other ills normally resulting when a business collapses. Thus the taxing authorities have nothing to gain here from a favorable ruling on interest, and others have much to lose. If the statute and its legislative history were dif-

ferent, these factors would not dictate our holding. But a court of equity can hardly put them aside in view of the statute's deficiencies.

### III. *Conclusion*

Because of reorganization time constraints, on February 6, 1987 we entered an order granting administration expense priority to postfiling taxes and penalties thereon, and disallowing altogether the claims for postfiling interest. This opinion contains all findings of fact and conclusions of law required by Bankruptcy Rule 7052, and supplies the basis for that order.