**In the Matter of PATCH PRESS, INC., Debtor.**

**Bankruptcy No. MM7–82–01234.**

United States Bankruptcy Court, W.D. Wisconsin.

Feb. 28, 1987.

---

Michael J. Mathis, Madison, Wis., Atty. Enforcements Section, DILHR.

James D. Harnett, Madison, Wis., Atty. Wisconsin Dept. of Revenue.

Patricia M. Gibeault, Brynelson, Herrick, Gehl & Bucaida, Madison, Wis., trustee.

William J. Rameker, Murphy & Desmond, S.C., Madison, Wis., for debor.

## MEMORANDUM DECISION

ROBERT D. MARTIN, Chief Judge.

Patch Press, Inc. ("Patch Press"), filed a chapter 11 petition on July 15, 1982. On September 26, 1983, the Wisconsin Department of Revenue, (hereafter "the Department"), filed claim #87 for the following taxes:

State of Wisconsin (claim #87)

| type of tax | tax period | tax due | interest | penalty | total |
|---|---|---|---|---|---|
| Sales | 10/82 | 621.41 | 90.72 | — | $ 712.13 |
| Withholding | 11/1/82–11/15/82 | 955.10 | 139.45 | — | 1,094,55 |
| Withholding | 11/16/82–11/30/82 | 1,028.70 | 140.94 | — | 1,169.64 |
| Withholding | 10/16/82–10/31/82 & 1/1/83–1/15/83 | 2,160.02 | 307.20 | 195.95 | 2,663.17 |
| Withholding | 1982 | 218.24 | 32.22 | 54.56 | 305.02 |
| TOTAL | | | | | $5,944.51 |

On October 27, 1983, Patch Press' plan of reorganization was confirmed. The Department's brief suggests that the taxes listed in claim #87 were paid during the reorganization period.

On June 19, 1985, Wisconsin's Department of Industry, Labor and Human Relations ("DILHR"), filed claim #179 listing, *inter alia*, the following taxes for which it claimed administrative priority:

DILHR (claim #179)

| type of tax | tax period | tax due | interest | fees/costs | total |
|---|---|---|---|---|---|
| Unemployment | 4Q82 | 2,347.17 | 610.27 | 15.00 | $ 2,972.44 |
| Unemployment | 1Q84 | — | 648.72 | 15.00 | 663.72 |
| Unemployment | 2Q84 | 17,999.99 | 1,440.00 | 15.00 | 19,454.99 |
| Unemployment | 3Q84 | 1,098.49 | 85.92 | 15.00 | 1,199.41 |
| Unemployment | 4Q84 | 5,965.32 | 119.31 | 15.00 | 6,099.63 |
| Unemployment | 1Q85 | 4,770.83 | — | 15.00 | 4,785.83 |
| TOTAL | | | | | $35,176.02 |

On March 22, 1985, the case was converted to a chapter 7 proceeding and Patricia Gibeault was appointed trustee. On July 26, 1985, the Department filed an amended claim (claim # 183) and claimed administrative priority for the following taxes which were incurred by the debtor after the confirmation of its plan:

State of Wisconsin (claim # 183)

| type of tax | tax period | tax due | interest | penalty | total |
|---|---|---|---|---|---|
| Sales | 1/85 & 2/85 | —— | —— | 20.00 | $ 20.00 |
| Withholding | 1/85 | 1,183.95 | 95.70 | 177.60 | 1,457.25 |
| Withholding | 2/1/85–2/15/85 | 450.86 | 31.34 | — | 482.20 |
| TOTAL | | | | | $1,959.45 |

On March 7, 1986, the trustee filed an objection to claims # 87, # 179, and # 183. After notice was sent, a hearing was held on April 7, 1986, and the matter was taken under advisement.

The trustee's first objection is that the Department's and DILHR's claims for taxes, interest, fees and penalties for periods subsequent to the date of the plan's confirmation and before the conversion to a chapter 7 proceeding must be denied administrative expense status since these taxes were not incurred "by the estate" as required by section 503(b)(1)(B). Specifically, she objects to the following claims of the Department: (1) withholding taxes for October 16–31, 1982, and January 1–15, 1983, (2) sales taxes for January and February 1985, (3) withholding taxes for January 1985, (4) withholding taxes for February 1–15, 1985, and (5) DILHR's claim for unemployment taxes for the following calendar quarters ("Q"): 1Q84, 2Q84, 3Q84, 4Q84, and 1Q85. While she concedes that these claims are entitled to priority under section 507(a)(7), she denies that they constitute costs of administration afforded priority under section 503(b).

As to the trustee's objection to the tax claim for the period October 16–31, 1982, and January 1–15, 1983, these expenses did not occur after confirmation on October 27, 1983, as she suggests, and thus there was an estate which benefitted from them. Furthermore, to the extent that these taxes have already been paid out as part of the reorganization plan as the Department's brief suggests, they cannot now be avoided by this court even though the case has subsequently been converted to a chapter 7 proceeding. *In re Ford*, 61 B.R. 913 (Bankr.W.D.Wis.1986).[1]

As to taxes which were incurred after confirmation but before conversion on March 22, 1985, the trustee is correct that confirmation of the plan vested the property with the debtor, and thus there was no postconfirmation estate which benefitted by the payment of taxes. *See United States v. Redmond*, 36 B.R. 932 (D.Kan. 1984) (postconfirmation preconversion taxes are not necessary costs of preserving the estate and are entitled to priority under

1. In *Ford*, the debtor filed a chapter 11 petition in February 1983 and was awarded a towing contract for 1984 in December 1983. The reorganization plan was confirmed in April 1984 and the case was converted to a chapter 7 proceeding in October 1984. The trustee brought suit to recover contract proceeds paid by the debtor to the secured creditor both before and after confirmation of the debtor's plan. This court held that until confirmation of the plan, contract proceeds generated by the operation of the estate during the pendency of the reorganization were property of the estate. It further held that the trustee could not avoid any transfers which occurred after confirmation and that payments prior to confirmation were proper exercise of the debtor's power to operate a business and thus could not be avoided. In so holding this court said:

> [T]he fact that a case is converted to chapter 7 following the failure of a confirmed plan [does not] result in the nullification of all actions by the parties or orders of the court which occurred during the pendency of the unsuccessful plan. Payments under a confirmed plan, even if considered to have been made from 'property of the estate,' constitute payments authorized 'under this title or by the court,' 11 U.S.C. § 549(a)(2)(B), and may not be avoided pursuant to section 549.

*Id.* at 917–18 (footnote omitted).

section 507(a)(6) [renumbered 507(a)(7) ] not 503(b)(1)(B)). *See also In re Hirsch-Franklin, Enterprises, Inc.,* 63 B.R. 864, 871–72 (Bankr.M.D.Ga.1986).

The trustee next objects to the interest claimed by the Department on the following taxes: (1) sales taxes for October 1982, (2) withholding taxes for November 1–15, 1982, (3) withholding taxes for November 16–30, 1982, and (4) withholding taxes for 1982. She also objects to the interest, fees and costs for the unemployment taxes claimed by DILHR for 4Q82. She argues that administrative expense priority is limited to the taxes for this postpetition preconfirmation period and does not extend to the interest which accrued when they were not paid on time by the estate.

■ The trustee's objection to the $15.00 tardy payment fee for the debtor's unemployment taxes for 4Q82 is not well-founded. That charge is given administrative priority in section 503(b)(1)(C). *See also* WIS.STAT. § 108.22(1)(a).

The trustee's objections to interest on the Department's 1982 taxes must also be denied. To the extent that the interest has been fully paid during the reorganization period as the Department's brief suggests, these funds cannot not be recovered by the trustee. *See* discussion of *Ford, supra.*

The objection to the interest on postpetition preconfirmation taxes which was not paid in the reorganization plan merits further discussion.

The trustee relies on *In re Lumara Foods of America, Inc.,* 50 B.R. 809 (Bankr.N.D.Ohio 1985). In *Lumara,* the debtor, a fast food restaurant chain, failed to collect and turnover to the state postpetition sales and withholding taxes. The court found that the postpetition taxes were entitled to administrative priority as a necessary expense of the estate, and that the penalties associated with those taxes were also entitled to administrative priority under the language of section 503(b)(1)(C). The claim for interest on the postpetition taxes was denied. The court recounted the legislative history of the 1978 Bankruptcy Reform Act:

It is [ ] significant to note that the only reference to interest as an administrative expense is found in the Senate bill's version of section 503(b)(1)(B)(i). The express provision was later deleted during the compromise debates on the final bill which eventually became law. That a deletion, instead of a revision, occurred is no legislative oversight. It represents a 'deliberate and significant' indication of the drafter's intent following the debates. Where there were two opposing views on post-petition interest, there evolved only one. Unmistakably, it was the House's exclusionary version of section 503(b)(1)(B)(i) which prevailed. The allowance of interest on post-petition taxes therefore would require the reinsertion of statutory language which was clearly left out beforehand. Such practice is more properly the role of the legislature than the court's [sic]. As a result, our inclination is to follow [*In re* ] *Stack Steel,* [28 B.R. 151 (Bankr.W.D. Wash.1983) ], and declare that interest on post-petition taxes is not an administrative expense under section 503(b).

*Id.* at 817 (cites omitted).

Another case which discusses whether interest on postpetition taxes has an administrative priority is *United States v. Friendship College, Inc.,* 737 F.2d 430 (4th Cir.1984). In that case, a South Carolina non-profit organization filed a chapter 11 petition in February 1981 and failed to pay its FICA and income taxes during the reorganization period. The debtor's attempt to reorganize was unsuccessful and on January 7, 1983, the court approved a liquidation plan. The government filed a claim for taxes due from the reorganization period, claiming that the taxes, penalties and interest were entitled to administrative expense priority under section 503(b)(1)(B)(i). The trustee argued that the claims were entitled priority under section 507(a)(6) [redesignated 507(a)(7) by Pub.L. No. 98–353]. The bankruptcy court held that only the employer's share of FICA taxes was entitled to administrative priority, and that the employee's share of FICA and income taxes were entitled to sixth priority status. It

also held that the interest on the taxes was not entitled to priority.

On appeal, the Fourth Circuit held that the postpetition taxes withheld from employees were entitled to first priority and that interest and penalties assessed against the estate for failure to pay the taxes on time were entitled to similar treatment as first priority expenses. In giving administrative expense priority to the interest on the tax claims, the court said:

> [W]e find no support anywhere for differentiation in the treatment of the tax and the interest thereon. Although the trustee argues that the absence of a provision like § 503(b)(1)(C) precludes first priority treatment for interest, we are unconvinced. To treat interest inconsistently from the taxes and penalties, we would require proof that such different treatment was intended by the Code. Instead, the only indication we have one way or the other suggests that interest should be first priority, *see*, Report of the Senate Judiciary Committee, S.Rep. No. 95–989, 95th Cong., 2d Sess. (1978), at 66, *reprinted in*, 1978 U.S.Code Cong. & Admin.News, 5787, where it was stated that interest on first priority taxes should also receive first priority treatment. We therefore opt for consistency. The Code does allow us to do this by treating the interest as a general administrative expense under § 503.

737 F.2d at 433.

There are several reasons why it appears that the *Friendship* decision is in keeping with the intent of Congress. As pointed out in the *Lumara* decision, the Senate version of section 503(b)(1)(B) gave priority to "Any taxes, including interest thereon." Although the House's version of this section did not mention interest, their draft of this section was derived mainly from the wording of section 64a(1) of the Bankruptcy Act which had been interpreted by *Nicholas v. United States*, 384 U.S. 678, 86 S.Ct. 1674, 16 L.Ed.2d 853 (1966), to include postpetition interest on tax claims which became payable during the chapter XI proceeding.

The court in *Nicholas* found that a bankruptcy proceeding was divisible into three periods: the pre-arrangement (prepetition period), the arrangement period (while the chapter XI was pending), and the liquidating bankruptcy period (analogous to a conversion to a chapter 7 liquidation). It further found that a tax incurred within any one of the periods could accrue interest only until the close of that period. As the *Nicholas* court said:

> The allowance of interest on Chapter XI debts until the filing of a petition in bankruptcy promotes the availability of capital to a debtor in possession and enhances the likelihood of achieving the goal of the proceeding, the ultimate rehabilitation of the debtor. Disallowance of interest on Chapter XI debts might seriously hinder the availability of such funds and might in many cases foreclose the prospect of the debtor's recovery.
>
> . . . .
>
> ... Taxes incurred in the pre-arrangement period must be content with a fourth priority under § 64a(4) of the Bankruptcy Act. On the other hand, taxes incurred during the arrangement period are expenses of the Chapter XI proceedings and are therefore technically a part of the first priority under § 64a(1).

*Id.* 384 U.S. at 687–88, 86 S.Ct. at 1681–82 (footnotes omitted). Since the taxes incurred during the chapter XI arrangement proceeding period were not payable until after that period had ended and the liquidating petition had been filed, the court denied the government's claim for interest.

The legislative history indicates that the only major change contemplated by the House in the area of administrative priorities was the elimination of the priority for the referee's salary. The representatives shared the concern of the *Nicholas* court that creditors should be assured of payment otherwise they would not extend administrative expenses to the debtor. *See* H.R.Rep. No. 595, 95th Cong., 1st Sess. 186–87, *reprinted in* 1978 U.S.Code Cong. & Admin.News 5787, 5963, 6147:

As under current law, the first priority is for administrative expenses. Those who must wind up the affairs of a debtor's estate must be assured of payment, or else they will not participate in the liquidation or distribution of the estate. The major change from current law in this priority is the elimination of fees for the Referees Salary and Expense Fund ... (footnotes omitted).

*See also id.* at 355, *reprinted in* 1978 U.S.Code Cong. & Admin.News at 6311. Normal business practice is that one must pay her debts on time or be charged interest for the time she has had the use of money at the creditor's expense. If creditors are to be expected to take the risk of extending credit to chapter 11 debtors, they cannot be expected to accept a lower rate of return by being denied interest on overdue accounts. Similarly taxing authorities should not be forced to extend interest free loans to debtors. *See In re Thompson,* 67 B.R. 1, 2, 85–1 U.S.Tax Case ¶ 9243 (Bankr. N.D.Ohio 1984) *citing In re Boston and Maine Corp.,* 719 F.2d 493, 502 (1st Cir. 1983) (Cambell C.J. concurring in part and dissenting in part).

The legislative history is silent as to why the Senate's specific provision for interest was not included in the final bill. *See* Floor Statement of Senator Dennis DeConcini, October 6, 1978, on introducing the Senate Amendment to the House Amendment to H.R. 8200 *reprinted in* 1978 U.S. Code Cong. & Admin.News 6505, 6519; Floor Statement of Congressman Don Edwards, September 28, 1978, upon introducing the House Amendment to the Senate Amendment to H.R. 8200 *reprinted in* 1978 U.S.Code Cong. & Admin.News 6436, 6450. However, there is evidence in the legislative history of section 726(a)(6) that the word "interest" was deleted as redundant because it was included within the meaning of "claim." According to Congressman Don Edwards,

The House amendment delete[d] a provision following section 726(a)(6) of the Senate amendment providing that the term 'claim' includes interest due owed [sic] before the date of the filing of the petition as unnecessary since a right to payment for interest due is a right to payment which is within the definition of 'claim' in section 101(4) of the House amendment.

*Id.* at 6459. Since tax claims can accrue postpetition, *see* 11 U.S.C. § 502(i), it is not unreasonable that interest should also accrue postpetition as part of the claim.

■ As the *Friendship* decision points out, it is unusual to differentiate between a tax and the interest due on it. Section 507(a)(7) has been interpreted to give the interest on both prepetition taxes and postconfirmation preconversion taxes the same priority as the underlying tax. *See In re Treister,* 52 B.R. 735, 737 (Bankr.S.D.N.Y. 1985) (prepetition interest entitled to priority under section 507(a)(6) [renumbered 507(a)(7) ] because it is included within the definition of claim); *Hirsch-Franklin, supra* 63 B.R. at 871–74 (interest on postconfirmation preconversion taxes entitled to priority under section 507(a)(7)(G)). Without a clearer indication that interest should be excluded as part of the tax claim entitled to administrative priority, taxes and the interest on them should be given consistent treatment.

Finally, the trustee objects to administrative expense status for DILHR's 4Q82 tax claim for $2,347.17 since DILHR did not adhere to the notice and hearing procedure requirements of section 503(b). Since it appears in this case that the creditors have not been given twenty days notice as required by Bankruptcy Rule 2002(a)(7), the effective date of this order will be delayed thirty days to allow time for notice to be given and will automatically become effective in the absence of any objections by the creditors.