William S. Rose, Jr., Asst. Atty. Gen., Gary R. Allen, Wynette J. Hewett, Linda E. Mosakowski, U.S. Dept. of Justice, Washington, D.C., for appellant.

Joseph D. Harkrader, Spokane, Washington, for appellee.

In re MARK ANTHONY CONSTRUCTION, INC., Debtor.

UNITED STATES of America, Appellant,

v.

Ian LEDLIN, Trustee, Appellee.

No. 87–4258.

United States Court of Appeals, Ninth Circuit.

Argued and Submitted Feb. 7, 1989.

Decided Sept. 22, 1989.

Before REINHARDT, KOZINSKI and TROTT, Circuit Judges.

REINHARDT, Circuit Judge:

This case presents a single, straightforward question of statutory construction. The question is, however, a difficult one. We must, in effect, seek to divine the substantive import, if any, of a statute's silence. In such a case reasonable arguments can often be made for either party's position. Here, our decision is one shaped as much by the application of fundamental legal principles as by consideration of the previous cases which have examined the question.

The question we answer is framed easily enough: is the interest which accrues on taxes due after the filing of a bankruptcy petition afforded first priority status as an administrative expense of the bankruptcy estate? It is explicit in the Bankruptcy Code ("Code") that the taxes which accrue after the filing of such a petition are treated as administrative expenses. Any fines or penalties relating to post-petition taxes are likewise afforded first priority status

by the Code. Furthermore, before the Bankruptcy Code was enacted in 1978, the Supreme Court had explicitly held that post-petition interest was also properly deemed an administrative expense.

The dilemma we resolve here stems from two facts. First, the Bankruptcy Code, enacted after the Supreme Court decision just mentioned, is silent on the priority of post-petition interest. Second, a version of the Code revision, which Congress modified when drafting the final text, specifically afforded post-petition interest first priority status. The basic question, therefore, concerns the effect on the pre-revision rule of the earlier drafts and the final text of the Bankruptcy Code. A majority of the Bankruptcy Appellate Panel concluded that the statute's failure expressly to incorporate the rule laid down by the Supreme Court, as well as the process by which the section attained its final form affirmatively demonstrated the will of Congress and, accordingly, ruled that post-petition interest was no longer allowable as an administrative expense. Possibly with some cynicism, we are reluctant, given the inconclusive history we shall explore below, to adopt such an ingenuous view of the process by which Congress fashions complex legislation. Moreover, the Bankruptcy Appellate Panel's recitation of the legislative history is somewhat inaccurate.[1] Because we conclude that Congress did not demonstrate an intent to abrogate the rule laid down by the Supreme Court, and because drawing a distinction between the priority afforded the interest accruing on post-petition taxes on the one hand, and the penalties or fines accruing on such taxes (not to mention the underlying taxes themselves) on the other, seems to run counter to the structure of the Bankruptcy Code—and to make little

sense—we reverse, and hold that interest accruing on taxes due after the filing of a bankruptcy petition is to be treated as an administrative expense of the bankruptcy estate, and consequently afforded first priority status.

I

Almost eight years ago, Mark Anthony Construction, Inc. filed a Chapter 11 petition, seeking to reorganize its failing business under the protection of the bankruptcy laws. Attempts to maintain the company as a going concern failed and, in July 1983, the reorganization was converted into a Chapter 7 liquidating bankruptcy. During the period in which Mark Anthony had operated under Chapter 11, it incurred social security and withholding taxes in the amount of $9,708.95. At the time the liquidation began, $1,672.96 in interest had accrued on these taxes.

The government filed a proof of claim contending that the taxes and the accrued interest should be deemed administrative expenses of the estate, entitled to first priority under section 503(b) of the Bankruptcy Code, 11 U.S.C. § 503(b).[2] The trustee objected in part, claiming that the interest should not be treated as an administrative expense under section 503. In a brief, unpublished order, the bankruptcy court agreed and ruled that the post-petition interest was not a first priority expense of the estate's administration. On appeal, a majority of the Bankruptcy Appellate Panel ("BAP") affirmed. *In re Mark Anthony Construction, Inc.*, 78 B.R. 260 (9th Cir. BAP 1987). Relying largely on the legislative history of the Bankruptcy Reform Act of 1978, Pub.L. 95–598, 92

---

**1.** There is no evidence that the House rejected any Senate proposal. Rather, the Conference Committee rewrote various provisions, merging some parts, drafting new language for others. At no point did the Committee or the House express any concern over making any change in existing law other that with respect to abolishing fees for bankruptcy referees. *See* H.R.Rep. No. 95–595, 95th Cong. 1st Sess. at 186–87, *reprinted in* 1978 U.S.Code Cong. & Ad.News 5787, 5963, 6147.

**2.** Section 503(b) states in relevant part:

(b) After notice and a hearing, there shall be allowed, [sic] administrative expenses ... including—

(1)(B) any tax—
  (i) incurred by the estate ...; or
(C) any fine, penalty, reduction in credit relating to a tax of a kind specified in subparagraph (B) of this paragraph

Stat. 2549, the BAP noted that one version of the reform legislation had expressly included post-petition interest in section 503's list of administrative expenses, and that the relevant language was not included in the final version. Given this fact, the majority refused to hold that post-petition interest should be afforded the priority the government sought. 78 B.R. at 263. Judge Elliott dissented, believing that the rule laid down by the Supreme Court in *Nicholas v. United States*, 384 U.S. 678, 86 S.Ct. 1674, 16 L.Ed.2d 853 (1966) (*"Nicholas"*), under which post-petition interest was treated as an administrative expense, had not been "expressly abrogat[ed]" with the passage of the 1978 Act and therefore remained in force. 78 B.R. at 264. The government appealed, and we now reverse.

## II

It is probably wise to begin with the common ground. Both parties agree that social security and employment withholding taxes incurred after the filing of the bankruptcy petition are entitled to first priority under the Code, as are fines and penalties incurred as a result of the failure timely to pay such taxes. Likewise, there is no dispute that, under the rules established by 11 U.S.C. § 726, and the priorities mandated by 11 U.S.C. § 507, the characterization of the post-petition interest at issue here as an "administrative expense" would give the interest first priority status in the ultimate distribution of the estate's assets. *See In re Friendship College, Inc.*, 737 F.2d 430, 432 (4th Cir.1984) (*"Friendship College"*). Finally, all agree that, were we still operating under the regime of the old Bankruptcy Act of 1898, 30 Stat. 541 ("Act"), the rule of *Nicholas* would require that the $1672 in post-petition interest be given first priority.

Since the dispute between the parties essentially reduces to the question whether

*Nicholas* has continuing vitality even after the adoption of the Bankruptcy Code, we preface our analysis of the statute with a brief discussion of the specifics of the case and the drafting of the Code. In *Nicholas*, the Supreme Court examined section 64(a) of the 1898 Act (then codified as 11 U.S.C. § 104(a)), which listed those debts which should be given priority in the distribution of a bankrupt's assets. The Court sought to assess the equities of awarding interest on taxes which accrued during three distinct phases of reorganization and bankruptcy proceedings: the period before the Chapter 11 reorganization petition is filed; the period during the reorganization; and the period after a liquidating bankruptcy petition is filed. *Nicholas*, 384 U.S. at 685–690, 86 S.Ct. at 1680–1683. (The middle period is the one to which we refer as the "post-petition" period for purposes of this case.) In that portion of its opinion relevant here, the Court concluded that allowing the interest during the reorganization period neither unfairly burdened the trustee nor disadvantaged other creditors.[3] It further reasoned that, inasmuch as during reorganization the government was delayed in receiving its rightful tax revenue by the operation of the bankruptcy laws themselves, it would not be just to penalize the government creditor by not allowing interest on unpaid taxes. 384 U.S. at 689, 86 S.Ct. at 1682. It thus ruled that the government could claim, as a debt which had first priority, interest on taxes which were due but went unpaid during the pendency of Chapter 11 proceedings. *Id.*

For reasons that will shortly become apparent, in this case we need not engage in an exhaustive narration of the legislative history of section 503(b)(1) of the Code, although where necessary, we shall discuss particular aspects of that history in greater detail. For now, sufficient background for our analysis of post-Code treatment of the

---

**3.** The inquiries of the *Nicholas* court were tailored to the two theories—the belief that allowing claims in bankruptcy for interest which accrued on some debts and not on others promoted "unfairness as between competing creditors" and represented an "administrative inconvenience" for the trustee—that had formed the basis

for the rule with respect to interest limited in *Nicholas*. *See Bruning v. United States*, 376 U.S. 358, 362, 84 S.Ct. 906, 908, 11 L.Ed.2d 772 (1964) (*"Bruning"*); *New York v. Saper*, 336 U.S. 328, 334, 69 S.Ct. 554, 557–58, 93 L.Ed. 710 (1949).

interest question is provided by three brief observations. First, the version of section 503 passed by the Senate explicitly stated that "taxes, *including interest thereon*," should be treated as administrative expenses. S. 2266, 95th Cong., 2d Sess. (1978) (emphasis added). Second, the House version of the section contained no reference to interest whatsoever. H.R. 8200, 95th Cong., 1st Sess., (1977). Third, the version adopted in conference, consistent with the House version, contains no mention of interest. *See* 124 Cong.Rec. H11094–95 (daily ed. Sept. 28, 1978) (statement of Rep. Edwards); 124 Cong.Rec. S17411 (daily ed. Oct. 6, 1978) (statement of Sen. DeConcini); n. 2, *supra.*

Since the Code became law, a number of courts have been called upon to determine the significance, if any, of these facts, and in roughly equal proportion, they have split in their response. More division appears when one examines the various modes of analysis brought to bear on the statute by the courts. Our decision, then, is one made against a backdrop of a substantial number of conflicting prior judgments and rationales; any course we take will necessarily require us to reject the results and reasoning of a number of other courts.[4] In such a situation, it seems prudent both to outline the reasoning of some of the cases adopting the rule contrary to the one we adopt here, and to explain in some detail the reasons why we have concluded that post-petition interest should be given priority as an administrative expense.

## A. *Adverse Authority*

While we need not discuss each case that has determined that post-petition interest is not to be afforded first priority, we should discuss a few cases that offer analysis representative of the run of cases we reject. Beginning with the least analytically sophisticated treatment of the issue, we note that some courts have looked solely to the fact that section 503 does not mention interest specifically and have concluded that interest can thus never be given first priority. *See, e.g., In re American International Airways, Inc.,* 77 B.R. 490, 495 (Bankr.E.D.Pa.1987). Other decisions, somewhat more thorough in approach, have at least attempted to see whether denying first priority to post-petition interest made any sense under the Code. *See In re National Automatic Sprinkler Co. of Ore., Inc.,* 63 B.R. 49, 50 (Bankr.D.Ore. 1986) (noting that interest on administrative claims generally is afforded fifth priority under 11 U.S.C. § 726(a)(5), but distinguishing contrary authority as being "decided on different facts applying a rationale other than the one here").

Some courts, relying on the notion that much bankruptcy adjudication rests on fundamental principles developed in equity, have chosen not to adopt any *per se* rule with respect to affording first priority to post-petition interest. For example, in *In re Gould & Eberhardt Gear Machinery Corp.,* 69 B.R. 944 (Bankr.D.Mass.1987) (*"Gould & Eberhardt"*), the court was called upon to determine, in the context of ruling on the confirmation of a Chapter 11 reorganization plan, the priority which would be afforded to certain administrative expenses. In looking at the interest on taxes which would accrue after the reorganization would begin, the court first discussed the split in the case law on the subject at some length, and examined in detail the arguments in favor of awarding interest advanced by the taxing creditors.[5] *Id.* at 946–47. Relying on an argument we discuss *infra* at 1107–08, it then stated that it believed that the Code allowed a court to award first priority status to administrative expenses not specifically given that priority by section 503 in certain cases, "depending on the nature of the claims and the equities of the case." *Id.* at 947. The

---

4. We note at this point that only one other court of appeals has considered the question before us. That court reached the same result we reach today. *Friendship College,* 737 F.2d at 432.

5. It may well be true that all creditors in bankruptcy are "taxing" in one way or another. The phrase is employed here as a term of art, a shorthand way of describing those governmental entities who have claims for unpaid taxes against the bankrupt.

*Gould & Eberhardt* court then concluded that the equities of the matter before it did not favor affording first priority to the interest on the debtor's unpaid taxes, basing this judgment largely on its finding that granting first priority to the interest would "caus[e the] termination of the Debtor's business, with the loss of employment and the other ills normally resulting when a business collapses." *Id.* at 948.

Without question, however, most of the courts that have rejected claims of first priority for post-petition interest have done so on the theory that the legislative history of section 503 indicated a specific Congressional intent not to allow interest to be deemed a first priority administrative expense. Apparently the first of these cases, and one on which the trustee here relies to great degree, is *In re Stack Steel & Supply Co.*, 28 B.R. 151, 156 (Bankr.W.D. Wash.1983) ("*Stack Steel*"). The *Stack Steel* court recited the legislative events we discussed above, noting that the Senate had included interest in its draft of section 503(b) but that the final version of the section passed by Congress omitted any reference to interest. *Id.* The court also acknowledged that "[t]he legislative history addressing the compromise bill is silent as to why the Senate's specific provision for interest was omitted." *Id.* Nevertheless, the court concluded, it was "a plausible inference" that the omission was a "deliberate and significant" one, to be read as demonstrating Congress' intent not to allow interest to share in the first priority afforded to the administrative expenses specifically enumerated in section 503. *Id.* The *Stack Steel* court then refused to grant first priority to the interest accruing on post-petition taxes. Other courts deciding the issue after *Stack Steel* have drawn the same "plausible inference" and have

likewise denied first priority to post-petition interest. *See, e.g., Matter of Mansfield Tire & Rubber Co., Inc.*, 73 B.R. 735, 740 (Bankr.N.D.Oh.1987); *Matter of Hirsch–Franklin Enterprises, Inc.*, 63 B.R. 864, 870–71 (Bankr.M.D.Ga.1986) (claim for $7.22 in post-petition interest would be treated as nonpriority unsecured claim); *Matter of Lumara Foods of America, Inc.*, 50 B.R. 809, 817 (Bankr.N.D.Oh. 1985) (adopting view that version of section 503 passed by Congress was an "exclusionary" one, deliberately excluding interest from administrative priority).

We disagree.

### B. *The Proper Construction*

The rationale for our decision starts with the admonition of Justice Jackson that questions such as the one we answer here must be resolved through "analysis of the statute instead of by psychoanalysis of Congress," and that courts must steadfastly resist the ready temptation to rest a decision on their surmises as to "what Congress probably had in mind." *United States v. Public Utilities Comm'n of California*, 345 U.S. 295, 319, 73 S.Ct. 706, 719, 97 L.Ed. 1020 (1953) (Jackson, J., concurring). Indeed, one of the basic reasons why we choose not to follow the analysis of the court in *Stack Steel* is our concern over the manner in which the bankruptcy court in that case so casually ascribed meaning, even motive, to concededly unexplained acts of the legislature.[6] *See Stack Steel*, 28 B.R. at 156. Rather, we choose to examine the section as enacted, in light of pre-existing law, and set forth a rule with respect to post-petition interest that is both consistent with its language and with the Bankruptcy Code in general.[7] For the rea-

---

6. Professor Llewellyn put the matter forcefully (maybe too forcefully) when he wrote that courts often should

> cease driveling about some compelling "legislative intent" which flatly controls the court, even in cases where no such intent existed or can be found, and [should] settle down instead to a court's real and responsible business of trying to make sense out of the legislation, so far as the text and context may allow.

K. Llewellyn, *The Common Law Tradition—Deciding Appeals*, (1960) at 528–29.

7. This approach is the one normally applied to construction of the bankruptcy laws in this circuit. In interpreting statutes in this field we avoid resort to legislative history where the statute is not overtly ambiguous. If legislative history is consulted, we confine our inquiries primarily to official committee reports, which "provide the authoritative expression of legisla-

sons we discuss below, we believe that a rule which affords first priority as an administrative expense to post-petition interest on taxes meets both these objectives.

Our approach to interpreting the bankruptcy laws must, as statutory construction should generally, begin with the language of the statute itself. *United States v. Ron Pair Enterprises, Inc.,* — U.S. ——, 109 S.Ct. 1026, 1030, 103 L.Ed.2d 290 (1989). The text of section 503 immediately presents two seemingly contradictory aspects. The resolution of this apparent contradiction is central to our conclusion. On the one hand, the section lists a series of expenses which should be treated as first priority administrative expenses. When a statute sets forth a series of items included under a general rule, the canon of *expressio unius est exclusio alterius,* under which a court infers an intention to make the statute's application restricted and limits the application of the statute to the specific listed examples, is often deemed applicable. *See Matter of Cash Currency Exchange, Inc.,* 762 F.2d 542, 552 (7th Cir. 1985) *("Cash Currency");* 2A Singer, *Sutherland Statutory Construction,* § 47.23 at 194 (1984).

On the other hand, the structure of section 503(b) is inconsistent with a restrictive interpretation of its list of administrative expenses; the statute states that "there shall be allowed administrative expenses, ... *including*—" and then lists (in subsections (1)–(5)) a series of expenses. 11 U.S.C. § 503(b)(1)–(5). In construing a statute, the use of a form of the word "include" is significant, and generally thought to imply that terms listed immediately afterwards are an inexhaustive list of examples, rather than a bounded set of applicable items. *See, e.g., Puerto Rico Maritime Shipping Authority v. I.C.C.,* 645 F.2d 1102, 1112 n. 5 (D.C.Cir.1981) ("hornbook law" that list following the word "including" is "illustrative, not exclu-

sive"); *Gould & Eberhardt,* 69 B.R. at 947 (" 'includes' and 'including' are not limiting language" when used in the Bankruptcy Code) (citing 11 U.S.C. § 102(3)); *Cash Currency,* 762 F.2d at 552 ("includes" or "including" demonstrates that Congress "intended to make the list of [terms] illustrative rather than exhaustive"); *Matter of Maidman,* 2 B.R. 569, 575 (Bankr.S.D.N.Y. 1980) ("when the verb 'include' is utilized in a definitional section [of the Code], it is generally improper ... to conclude that entities not specifically enumerated in the definition of [the relevant term] are to be excluded"). In fact, at least one court has relied upon this interpretation of "including" to conclude that post-petition interest should properly be given first priority as an administrative expense. *In re Bergin Corp.,* 77 B.R. 210, 212 (Bankr.E.D.Wisc. 1987) ("[t]he precise wording of § 503(b) is such that only illustrations of administrative expenses are set forth[; t]hat listing, however, is not exclusive") *("Bergin ").*

The Bankruptcy Code specifically provides that "including" is not a limiting term when used in the Code. 11 U.S.C. § 102(3).[8] Especially in light of this unambiguous general directive, we conclude that the administrative expense statute's use of "including" renders the *expressio unius* rule inapplicable to section 503. Thus, the *Gould & Eberhardt* court was correct in determining that expenses not specifically listed in the section can be deemed administrative expenses. However, at least with respect to the post-petition interest question, we decline to adopt that court's case-by-case approach to determining priority and hold instead that the specific common law rule laid down by the Supreme Court in *Nicholas* survives the enactment of the Code and allows interest accruing on unpaid post-petition taxes to be given first priority as an administrative expense.

tive intent." *In re Kelly,* 841 F.2d 908, 912 & n. 3 (9th Cir.1988) (Kozinski, J.) (citing *Garcia v. United States,* 469 U.S. 70, 76, 105 S.Ct. 479, 483, 83 L.Ed.2d 472 (1984)).

**8.** 11 U.S.C. § 102 states in pertinent part:
§ 102 **Rules of Construction**

In this title [the Bankruptcy Code]—

(3) "includes" and "including" are not limiting;

We base our holding on three grounds. The first concerns what we perceive to be the proper relationship between the Code and the rule of *Nicholas*. As we have stated several times already, Congress gave no explanation for its failure to mention "interest" among the items to be afforded first priority status. The history relating to the final Committee action, and the various predecessor versions of the section, is wholly inconclusive. There is no indication anywhere in the legislative history that Congress intended to, or even was aware that its failure to list interest specifically would, alter the priority of post-petition interest. *See Friendship College*, 737 F.2d at 433; *Matter of Patch Press, Inc.*, 71 B.R. 345, 349 (Bankr.W.D.Wisc.1987) (*"Patch Press"*).

All of this is to say that Congress nowhere expressed an intention to abrogate the rule established in *Nicholas*.[9] (Indeed, it never expressed an awareness of having done so.) We believe that this fact brings an important principle of statutory construction to bear directly on the issue we address here, namely that " 'no changes in law or policy are to be presumed from changes in language in [a statute's] revision unless an intent to make such changes is clearly expressed.' " *Finley v. United States*, —— U.S. ——, 109 S.Ct. 2003, 2009, 104 L.Ed.2d 593 (1989) (quoting *Fourco Glass Co. v. Transmirra Products Corp.*, 353 U.S. 222, 227, 77 S.Ct. 787, 791, 1 L.Ed.2d 786 (1957)). This rule—one which bars a court from construing a statute to have abrogated the common law, or to have established a new rule of law, without clear evidence in favor of such a construction—is firmly and sensibly entrenched in federal jurisprudence. *See N.L.R.B. v. Plasterers' Local U. No. 79*, 404 U.S. 116, 130–31, 92 S.Ct. 360, 369, 30 L.Ed.2d 312 (1971) (Su-

preme Court "has frequently cautioned that '[i]t is at best treacherous to find in Congressional silence alone the adoption of a controlling rule of law' ") (quoting *Girouard v. United States*, 328 U.S. 61, 69, 66 S.Ct. 826, 830, 90 L.Ed. 1084 (1946)); *Federal Savings & Loan Insurance Corp. v. Quinlan*, 678 F.Supp. 174, 176 (E.D.Mich. 1988) (common law rules survive unless evidence exists that subsequently enacted statute intended to be in derogation of prior case law) (citing *Continental Management v. United States*, 208 Ct.Cl. 501, 527 F.2d 613, 620 (1975)).

The implication of the foregoing for our inquiry is manifest. Congress never expressed an intention to create a new rule with respect to the priority of interest accruing on post-petition taxes; it did not in any way evince a desire to overrule *Nicholas*. Given this fact, we avoid the "treacherous" course of inferring from Congress' silence any affirmative intentions. We are unsure to what extent Congress, in enacting section 503, considered *Nicholas*. At the same time, we are certain that, to the extent it did consider the case, it provided us with no basis to conclude that it intended to overrule it. *See In re Associated Air Services, Inc.*, 75 B.R. 47, 49 (Bankr.S.D. Fla.1987) ("nothing in the [Code's] legislative history to indicate the Congress wished to abrogate *Nicholas* under the present Bankruptcy Code") (*"Associated Air Services"*).

The second ground for our conclusion is that a rule which treats interest in the same manner as the underlying tax is consistent with the general treatment of taxes and interest in the Code, and in the tax laws. As courts have noted in the bankruptcy context before, interest is generally considered "an integral part of a continuing debt," *Bruning*, 376 U.S. at

---

9. We note that, throughout the official reports accompanying the House and Senate versions of the Code, there are explicit descriptions of the manner in which Code provisions would overrule prior court decisions or otherwise alter the law as it had evolved under the Act. *See, e.g.,* S.Rep. No. 95–989, July 14, 1978 at 69 (describing manner in which proposed section 506(a)(4) would abrogate rule with respect to wage priority of fringe benefits laid down in *United States*

*v. Embassy Restaurant*, 359 U.S. 29, 79 S.Ct. 554, 3 L.Ed.2d 601 (1959)), *reprinted in* 1978 U.S. Code Cong. & Ad.News. 5787, 5855; H.Rep. No. 95–595, Sept. 8, 1977 at 188 (creation of new fifth priority for consumer claims), *reprinted in Id.* at 6148. We have found no similar indication that Congress intended to overrule a decision of the Supreme Court, or otherwise alter the priority of claims, with respect to post-petition interest.

360, 84 S.Ct. at 908, and interest on unpaid taxes is "part and parcel of the tax due" under the Internal Revenue Code. *Associated Air Services*, 75 B.R. at 48–49 (concluding, based on this fact, that any reference to interest in section 503(b) was "completely unnecessary"). *See also* 26 U.S.C. § 6601(e)(1) ("[a]ny reference in [the Internal Revenue Code] to any tax imposed by this title shall be deemed also to refer to interest imposed by this section on such tax"). Departing from the general rule and differentiating between taxes and interest only in this limited context makes little sense to us; nor has the trustee advanced any compelling reason why Congress would have done so.[10] Accordingly, we construe section 503, consistent with the rest of the Bankruptcy Code, in a manner which treats interest no differently from the underlying tax on which it accrues. *See Friendship College*, 737 F.2d at 433 ("opt[ing] for consistency," court refuses to treat taxes and interest differently for administrative priority purposes); *Patch Press*, 71 B.R. at 349–350.[11]

Finally, we agree with the *Bergin* court that "there is no logical reason why Congress would afford administrative treatment to penalties but not to interest." *Bergin*, 77 B.R. at 212. Penalties, unlike interest, are not normally considered integral to the tax debt itself, and we can discern no justification, in the legislative history or elsewhere, for Congress' adopting a rule that gives a greater priority to penalties than to interest. For this third reason also, we believe that a rule which affords first priority as an administrative expense to post-petition interest is both sensible in itself and consistent with the Code.

### III

The Bankruptcy Code is a complex, sometimes nearly opaque, statute, and the rules of construction we must apply to its dimmer aspects are themselves arcane, even contradictory at times. Nonetheless, we believe that the decision we have stated and explained here is the correct one. It is consistent with the language Congress adopted in drafting section 503. It is not contravened, or even cast into doubt, by the legislative history of the statute. It preserves a rule of common law in a case in which there is no indication that Congress meant to overrule that law. Finally, it is consonant with the treatment of similar issues in different contexts in the Bankruptcy laws.

And to us the contrary rule makes little sense.

Accordingly, we reverse the judgment of the Bankruptcy Appellate Panel.

REVERSED

---

**10.** We reject the trustee's suggestion that allowing priority on the interest would be unfair to creditors other than the taxing authorities. We agree with the view expressed in a similar context by Chief Judge Campbell of the First Circuit that, while the bankruptcy laws can delay payment of taxes rightly owed, the operation of those laws should not work to force a taxing authority to make an interest-free loan to a party temporarily excused from paying taxes. *In re Boston and Maine Corp.*, 719 F.2d 493, 503–04 (1st Cir.1983) (considering railroad reorganization under § 77 of the Bankruptcy Act) (Campbell, C.J., concurring in part and dissenting in part).

**11.** Some courts, *Patch Press* among them, have taken a statement on the floor of the House by Rep. Edwards concerning § 726 of the Code, to the effect that the word "interest" was deleted from that section because it was thought included in the word "claim" and would therefore be redundant. *See* 71 B.R. at 350 (citing 1978 U.S.Code Cong. & Ad.News 6505, 6459). While, as we have explained above and as a matter of bankruptcy practice, interest may well be normally thought to be encompassed in a claim (and, by extension, in the word "tax"), we decline to rest our decision on this isolated snippet of legislative history. *See* n. 4, *supra*.