In re WALLINGFORD'S FRUIT
HOUSE, Debtor.

WALLINGFORD'S FRUIT HOUSE,
Plaintiff,

v.

INHABITANTS OF THE CITY OF
AUBURN, Defendant.

Bankruptcy No. 282–00086.
Adv. No. 282–0306.

United States Bankruptcy Court,
D. Maine.

June 6, 1983.

Stephen B. Wade, Fales & Fales, P.A., Lewiston, Me., for debtor/plaintiff.

G. Curtis Webber, Linnell, Choate & Webber, Auburn, Me., for the City of Auburn.

Gary C. Wood, Maine Municipal Ass'n Legal Services, Augusta, Me., amicus curiae.

## MEMORANDUM OF DECISION

JAMES A. GOODMAN, Bankruptcy Judge.

The debtor filed on October 25, 1982 a complaint seeking to hold the defendant in contempt for violating the automatic stay of 11 U.S.C. § 362. The debtor moved for partial summary judgment on the issue of

whether the defendant violated the stay, and the parties filed an agreed statement of facts.

The dispute before the Court involves the defendant's actions to preserve and enforce its municipal tax liens on the debtor's real property pursuant to Me.Rev.Stat.Ann. tit. 36, §§ 942–943 (Supp.1982). Involved are real property taxes due for the years 1980 and 1981. The debtor filed its chapter 11 petition on March 2, 1982. Prior to that date, the taxes for 1980 and for 1981 both were assessed. On April 28, 1981, the Auburn tax collector sent the debtor notices pursuant to Me.Rev.Stat.Ann. tit. 36, § 942 stating the amount of the 1980 taxes due, describing the real estate being taxed, asserting a lien on the property, and stating that lien notices would be filed in the Registry of Deeds if the taxes were not paid within 30 days (hereinafter referred to as "§ 942 notice"). The taxes were not paid, and notices of liens were recorded in the Androscoggin County Registry of Deeds on May 28, 1981.

On May 7, 1982, after the debtor had filed its chapter 11 petition, the Auburn tax collector sent § 942 notices to the debtor with regard to the 1981 taxes similar to the notices sent on April 28, 1981. The 1981 taxes were not paid, and on June 14, 1982 the tax collector filed notices of liens in the Androscoggin County Registry of Deeds covering the 1981 real estate taxes. On October 21, 1982, the Auburn tax collector sent notices to the debtor pursuant to Me. Rev.Stat.Ann. tit. 36, § 943 advising that the tax liens covering the 1980 taxes previously recorded would expire automatically on November 28, 1982 and that on that date the City of Auburn would take title to the property and be entitled to immediate possession (hereinafter referred to as "§ 943 notice").[1]

The debtor contends that the City violated the automatic stay of 11 U.S.C. § 362(a) by (1) filing notices of lien in the Registry of Deeds on June 14, 1982; and (2) sending the § 943 notice to the debtor on October 21, 1982.

■ A summary of the tax lien foreclosure process involved here will aid in understanding the issues before the Court. Maine law provides:

There shall be a lien to secure the payment of all taxes legally assessed on real estate.... Such lien shall take precedence over all other claims on said real estate and shall continue in force until the taxes are paid or until said lien is otherwise terminated by law.

Me.Rev.Stat.Ann. tit. 36, § 552 (1978). This lien arises upon the date the tax is assessed. *Maddocks v. Stevens,* 89 Me. 336, 336, 36 A. 398, 399 (1896). The lien may be enforced in several ways, one of which is through the procedure established in Me.Rev.Stat.Ann. tit. 36, §§ 942–43. Section 942 provides in part:

Liens on real estate created by section 552, in addition to other methods established by law, may be enforced in the following manner.

The tax collector may, after the expiration of 8 months and within one year after the date of original commitment of a tax, give to the person against whom the tax is assessed, ... or send by certified mail, return receipt requested, to his last known address, a notice in writing signed by the tax collector or bearing his facsimile signature, stating the amount of the tax, describing the real estate on which the tax is assessed, alleging that a lien is claimed on the real estate to secure the payment of the tax, and demanding the payment of the tax within 30 days after service or mailing of the notice with $1 for the tax collector for making the demand together with the certified mail, return receipt requested, fee....

After the expiration of the 30 days and within 10 days thereafter, the tax collector shall record in the registry of deeds of the county or registry district where the

---

1. The running and maturing of all tax lien mortgages held by the City of Auburn upon property of the debtor's estate were stayed by an order of this Court dated November 19, 1982 pending the outcome of this proceeding.

real estate is situated a tax lien certificate signed by the tax collector or bearing his facsimile signature, setting forth the amount of the tax, a description of the real estate on which the tax is assessed and an allegation that a lien is claimed on the real estate to secure the payment of the tax, that a demand for payment of the tax has been made in accordance with this section, and that the tax remains unpaid.

Section 943 provides in part:

The filing of the tax lien certificate in the registry of deeds shall create a tax lien mortgage on said real estate to the municipality in which the real estate is situated having priority over all other mortgages, liens, attachments and encumbrances of any nature, and shall give to said municipality all the rights usually incident to a mortgagee, except that the municipality shall not have any right of possession of said real estate until the right of redemption shall have expired.

The filing of the tax lien certificate in the registry of deeds shall be sufficient notice of the existence of the tax lien mortgage.

In the event that said tax, interest and costs shall be paid within the period of redemption, the municipal treasurer or assignee of record shall prepare and record a discharge of the tax lien mortgage in the same manner as is now provided for the discharge of real estate mortgages.

If the tax lien mortgage, together with interest and costs, shall not be paid within 18 months after the date of the filing of the tax lien certificate in the registry of deeds, the said tax lien mortgage shall be deemed to have been foreclosed and the right of redemption to have expired.

The municipal treasurer shall notify the party named on the tax lien mortgage and each record holder of a mortgage on the real estate not more than 45 days nor less than 30 days before the foreclosing date of the tax lien mortgage, in a writing left at his last and usual place of abode or sent by certified mail, return receipt requested, to his last known address of the impending automatic foreclosure and indicating the exact date of foreclosure. If notice is not given in the time period specified in this section to the party named on the tax lien mortgage or to any record holder of a mortgage, the person not receiving timely notice shall have the right to redeem the tax lien mortgage until 30 days after the treasurer does provide notice in the manner specified in this section.

■ The Maine Supreme Judicial Court has recently stated that it is a well-established principle that strict compliance with statutory requirements is necessary to divest property owners of their titles for nonpayment of taxes. Failure to follow strictly the statutory requirements "will destroy the validity of the tax lien certificate and will prevent the town from acquiring title under the tax lien foreclosure procedures." *Blaney v. Inhabitants of Shapleigh,* 455 A.2d 1381, 1387 (Me.1983).

Turning to the automatic stay, it seems clear that, unless an exception applies, the filing of a tax lien certificate in the Registry of Deeds and the sending of the § 943 notice to the debtor violate 11 U.S.C. § 362(a).[2] While the parties might disagree which specific label applies, they would concede that filing a tax lien certificate in the Registry is an act to either create, perfect, or enforce a lien. The § 943 notice, which advised the debtor that in approximately 30 days the City would take title to the debtor's property and be entitled to immediate possession if the tax lien mortgage were not paid, is an act designed to collect a pre-peti-

---

2.  Section 362(a) stays, *inter alia:*
    (3) any act to obtain possession of property of the estate or of property from the estate;
    (4) any act to create, perfect, or enforce any lien against property of the estate;
    (5) any act to create, perfect, or enforce against property of the debtor any lien to the extent that such lien secures a claim that arose before the commencement of the case. . . .
    (6) any act to collect, assess, or recover a claim against the debtor that arose before the commencement of the case. . . .

tion claim. The automatic stay was intended to prevent creditors from attempting in any way to collect a pre-petition debt. "Inexperienced, frightened, or ill-counseled debtors may succumb to suggestions to repay notwithstanding their bankruptcy." H.R.Rep. No. 595, 95th Cong., 1st Sess. 342 (1977), U.S.Code Cong. & Admin.News 1978, pp. 5787, 5963, *reprinted in* 2 app. *Collier on Bankruptcy* 342 (15th ed. 1982).

The City contends that an exception to the stay does apply, namely, 11 U.S.C. § 362(b)(3):

> The filing of a petition ... does not operate as a stay—under subsection (a) of this section, of any act to perfect an interest in property to the extent that the trustee's rights and powers are subject to such perfection under section 546(b) of this title. . . .[3]

The Court will examine the City's argument with respect to, in turn, the § 943 notice and the filing of the tax lien certificate.

### Section 943 Notice

Prior to 1973, section 943 did not require that notice be sent to the property owner after the tax lien certificate was filed in the Registry of Deeds. In 1973, L.D. 722 was introduced into the 106th Legislature, providing that the municipal treasurer notify the property owner between 45 and 30 days prior to the expiration of the 18-month foreclosure period. L.D. 722 was amended to add the following sentence: "In the event the notice provided in this section has not been given, the party named on said tax lien mortgage shall have the right to redeem said real estate mortgage within 30 days after the said notice." The problem this amendment was intended to resolve

was explained in legislative debate by Senator Fortier:

> However, there is a technical problem in the way the original bill was written in that it would be possible, if the municipal treasurer neglected, inadvertently or otherwise, to send this notice, that the municipality could lose its equity in the lien. . . . This would simply require that, in case such a notice was not properly sent, the taxpayer would have another 30-day notice from the time that he was properly notified, so it would not jeopardize the equity of the municipality.

2 Me.Leg.Rec. 2464 (1973). "The clear purpose of [L.D. 722 as amended] was to require the giving of the notice. It was not intended, in any event, that the rights of the municipality under the lien should be cut off." *Cummings v. Town of Oakland,* 430 A.2d 825, 830 (Me.1981). Therefore, even assuming that the running of the 18-month redemption period was not tolled by the automatic stay,[4] the city's failure to send the § 943 notice not more than 45 days nor less than 30 days before the foreclosing date of the tax lien mortgage would not jeopardize its rights under the lien. The failure to send that notice within the given time limits merely extends the redemption period. Thus, that notice was not necessary either to perfect or preserve the City's tax lien status, but was intended to collect or enforce the lien on property of the debtor. The Court concludes that it was sent in clear violation of the automatic stay.

### Tax Lien Certificate

Section 942 provides that the tax collector may send notice demanding payment of taxes after 8 months and within one year after the date of original commitment of

---

3. Title 11 U.S.C. § 546(b) provides:
   (b) The rights and powers of the trustee under section 544, 545, or 549 of this title are subject to any generally applicable law that permits perfection of an interest in property to be effective against an entity that acquires rights in such property before the date of such perfection. If such law requires seizure of such property or commencement of an action to accomplish such perfection, and such property has not been seized or such

action has not been commenced before the date of the filing of the petition, such interest in such property shall be perfected by notice within the time fixed by such law for such seizure or commencement.

4. The Court need not, and does not, decide whether the running of the 18-month redemption period is tolled by any provision of the Bankruptcy Code.

the tax. If payment is not forthcoming, then after 30 days but within 40 days thereafter, the tax collector shall record a tax lien certificate in the appropriate registry of deeds. Section 943 provides that the 18-month redemption period begins running on the date of filing in the registry.

The City argues that failure to timely follow the above procedure results in the City's tax lien being "otherwise terminated by law." Me.Rev.Stat.Ann. tit. 36, § 552. Therefore, the City contends, filing in the registry is an act of perfection permitted under 11 U.S.C. § 546(b).

Section 546(b) states in part:

The rights and powers of the trustee ... are subject to any generally applicable law that permits perfection of an interest in property to be effective against an entity that acquires rights in such property before the date of such perfection.

"The purpose of the subsection is to protect, in spite of the surprise intervention of bankruptcy petition, those whom State law protects by allowing them to perfect their liens or interests as of an effective date that is earlier than the date of perfection." H.R.Rep. No. 595, 95th Cong., 1st Sess. 371 (1977) *reprinted in* 2 app. *Collier on Bankruptcy* 371 (15th ed. 1982); S.Rep. No. 989, 95th Cong., 2d Sess. 86–87 (1978), *reprinted in* 3 app. *Collier on Bankruptcy* 86–87 (15th ed. 1982), U.S.Code Cong. & Admin.News 1978, pp. 5872, 6327. This section has been applied, for example, in cases where mechanic's or materialmen's liens under state law must be filed within a certain period after the rendering of services. Upon filing, the effective date of the lien is the date services were rendered. *See, In re Design Builders, Inc.,* 18 B.R. 392, 8 B.C.D. 793 (Bkrtcy.D.Idaho 1981); *see also In re Saberman,* 3 B.R. 316, 6 B.C.D. 146 (Bkrtcy.N.D. Ill.1980). Section 546(b) permits the holder of a mechanic's lien to prevail over the

trustee as well as other creditors whose claims arose after services were rendered, but before the mechanic's claim of lien is filed.

■ The position of the City differs significantly from that of a mechanic's lien claimant. By statute, the city's tax lien takes precedence over *all* other claims on the real estate from the moment it arises. Me.Rev.Stat.Ann. tit. 36, § 552. A tax lien certificate need not be filed in order for the City's lien to prevail over the trustee or other creditors—the tax lien is superior to all other claims on the real estate until the taxes are paid or the lien is terminated by law. While the mechanic's lien claimant must file to *create* or *perfect* his lien, the City's lien is in existence and fully perfected from its inception. The City is concerned not with the lien's perfection, but with preventing its termination.

Me.Rev.Stat.Ann. tit. 36, § 942 is part of Article 2, entitled "Enforcement of Lien on Real Estate." Section 942 begins by stating: "Liens on real estate created by section 552, in addition to other methods established by law, may be *enforced* in the following manner." (Emphasis added). Clearly, the Maine legislature recognized the enforcement aspect of this procedure. After the filing, the City need do nothing more in order to foreclose upon the property in question than await the passage of time and send the § 943 notice.[5] "The very existence of government necessitates that the tax collection process be not subject to the delays attendant upon formal judicial proceedings;" thus, delinquent taxpayers need not be provided a hearing before foreclosure. *See City of Auburn v. Mandarelli,* 320 A.2d 22, 29–30 (Me.1974). Clearly, however, the actions which take the place of "formal judicial proceedings" are not mere acts of perfection—they are, at least in part, acts of enforcement.

---

**5.** Whether the automatic stay tolls the running of the statutory period for redemption is an unsettled question that need not be decided in this case. *Compare, e.g., In re Shea Realty, Inc.,* 21 B.R. 790 (Bkrtcy.D.Vt.1982) and *In re Sapphire Investments,* 19 B.R. 492, 9 B.C.D.

217, 6 C.B.C.2d 639 (Bkrtcy.D.Ariz.1982) (stay tolls redemption period) *with In re Ecklund & Swedlund Development Corp.,* 17 B.R. 451 (Bkrtcy.D.Minn.1981) (stay does not toll redemption period).

■ It is the City's position that failure to act within eight to twelve months after the date the tax was committed will terminate its lien, even where there is an intervening bankruptcy. If so, filing is necessary not to perfect, but to maintain the City's perfected status. This argument asks the Court to ignore the enforcement aspects of the filing procedure and to broadly construe an exception to the automatic stay. Congress intended, however, that the automatic stay be far-reaching and provide broad protection to debtors. *In re R.S. Pinellas Motel Partnership,* 2 B.R. 113, 117–18, 5 B.C.D. 1292, 1295, 1 C.B.C.2d 349, 356 (Bkrtcy.M.D.Fla.1979); *see* H.R.Rep. No. 595, 95th Cong., 1st Sess. 340 (1977), *reprinted in* 2 app. *Collier on Bankruptcy* 340 (15th ed. 1982). The automatic stay "is extremely broad in scope and aside from the limited exceptions of subsection (b) should apply to almost any type of formal or informal action against the debtor or the property of the estate." 2 *Collier on Bankruptcy* ¶ 362.04 (15th ed. 1982) (footnote omitted). Under section 362(b)(3), "[a]ll that is permitted is perfection...." *Id.* ¶ 362.05[3] (15th ed. 1982).

■ The Court has found no persuasive reason to treat municipal governments differently than other creditors with respect to the enforcement of liens.[6] If, as the City asserts, failure to comply with the literal terms of section 942 in spite of the filing of bankruptcy will result in the loss of the tax lien,[7] there exist ample means for prompt and informal relief from the stay where appropriate. *Id.* ¶ 362.04[4]. The Court can modify the stay to permit actions necessary for the continuation of the City's perfected lien-holder status, if any, while continuing to stay any consequences of those actions that would enforce the liens. In addition, such relief can be granted *ex parte* when necessary. *See* 11 U.S.C. § 362(f).

Finding no genuine issue as to any material fact and that the City violated the automatic stay, the Court grants partial summary judgment to the plaintiff on that issue. Further proceedings shall be held on the issues of contempt and, if necessary, sanctions.

Enter Order.

---

**6.** The automatic stay applies to all "entities," which by definition includes governmental units. 11 U.S.C. § 101(14). Where Congress intended that governmental units receive special treatment, it provided "specific exceptions." *See* 11 U.S.C. §§ 362(b)(4), (b)(5), (b)(8). The legislative history states that with respect to the application of the automatic stay to governmental actions, Congress intended to assert the bankruptcy power over State governments under the Supremacy Clause. H.R.Rep. No. 595, 95th Cong., 1st Sess. 342 (1977) *reprinted in* 2 app. *Collier on Bankruptcy* 342 (15th ed. 1982); S.Rep. No. 989, 95th Cong., 2d Sess. 51 (1978) *reprinted in* 3 app. *Collier on Bankruptcy* 51 (15th ed. 1982).

**7.** It seems unlikely that a state court would hold that by observing the automatic stay, a municipality thereby loses its tax lien. State law recognizes the principle that the time of the pendency of insolvency proceedings should not be counted as part of the time limited for the commencement of certain actions. *See* Me. Rev.Stat.Ann. tit. 14, § 866. As noted in text, the notice and filing requirements of Me.Rev. Stat.Ann. tit. 36, §§ 942–43 appear to be intended to take the place of the usual "formal judicial proceedings."