In re Larry & Cynthia **MARTIN**, d/b/a Martin's A & W Drive-in Restaurant and Martin's Exxon, Debtors.

William R. **BLACK**, Trustee, Plaintiff,

v.

**PEOPLES HERITAGE SAVINGS BANK**, Defendant.

Bankruptcy No. 284–00296.
Adv. No. 88–2084.

United States Bankruptcy Court, D. Maine.

June 23, 1989.

Bruce Hochman, Black Lambert Coffin & Haines, Portland, Me., for plaintiff.

Andrew A. Cadot, Perkins, Thompson, Hinckley & Keddy, Portland, Me., for defendant.

## MEMORANDUM OF DECISION

FREDERICK A. JOHNSON, Chief Judge.

### INTRODUCTION

In this adversary proceeding, the issue presented involves the proper priority which should be accorded unpaid postpetition real estate taxes.[1] The issue is before the court on the trustee's "object[ion] to the claim of the City of Portland [the City] for real estate taxes, interest and penalties [i.e. costs]"[2]

Hearing was held, and the parties had an opportunity to file briefs. The court concludes that the City's entitlement to secured status is dependent on strict compliance with the pertinent provision of Maine law, i.e. 36 M.R.S.A. § 942 (Supp.1988). As a result, for taxes assessed on April 1, 1988, the City holds a secured claim. For the pertinent dates of assessment prior to 1988, the City is entitled to payment of real estate taxes as unsecured administrative expenses, pursuant to 11 U.S.C. § 507(a)(1). This court further finds that the City is entitled to postpetition interest, but not costs.

1. The parties did not indicate, in the briefs submitted to the court, the dates of assessment. However, as suggested in the text, the court has concluded as a factual finding that the taxes were assessed postpetition.

2. In the facsimile tax bills attached to its proof of claim, the City itemized amounts due for real [taxes], interest and costs, but not penalties.

## FACTS

On December 11, 1984, Larry T. and Cynthia J. Martin (collectively "the debtors") filed for relief under Chapter 11 of the Bankruptcy Code. In May 1985 the court approved the voluntary conversion of the case to a case under Chapter 7. No plan of reorganization was confirmed prior to the conversion of the case.

Property of the estate included real estate located at 258 Summit Street in Portland (the property). On or about September 16, 1988, the trustee entered into a contract for the sale of the property.

On September 21, 1988, the Chapter 7 Trustee filed a complaint to sell the property free and clear of liens and "for [a] determination of liens." On October 14, 1988 the trustee filed an amended complaint.

On October 24, 1988, the City filed a proof of claim in the principal amount of $6,858.19 and "additional charges", i.e. interest and costs, of $1,340.46. In its proof of claim, the City further indicated that the claim was founded on real estate taxes for the years 1986–1989, "which became due on [April 1, 1986]." The trustee indicated that tax liens forwarded to him on November 17, 1988 stated that the pertinent tax period began July 1, 1985 and ended June 30, 1988. Even if the earliest date of assessment was April 1, 1985, all of the taxes at issue are postpetition claims.

On October 12, 1988, the trustee filed a Notice of Intended Sale. The City filed a timely objection, in which it asserted the seventh priority for allowed unsecured claims of governmental units, pursuant to 11 U.S.C. § 507(a)(7)(B). Subsequently, on November 2, 1988, the City filed a motion for relief from stay, relative to its claimed right to lien the property. In pertinent part, the City stated in its motion that it "was prevented from filing ... [tax] liens [pursuant to 36 M.R.S.A. § 942 (Supp. 1988) ] ... because of the automatic stay provided by the Bankruptcy Act."

On November 16, 1988, the court granted the City's motion. The trustee indicated that on November 17, 1988 the City forwarded tax lien certificates to him by certified mail.

By order of November 18, 1988, this court authorized the sale of the property. The City moved to amend the order to provide for payment to the City as a "secured priority creditor". The motion was denied. The property was sold on November 23, 1988, pursuant to this court's order. No disbursements have yet been made to the City. Remaining at issue is the trustee's objection to the City's claims for real estate taxes, interest and costs.

## DISCUSSION

### I. Effect of Automatic Stay on Secured Status

#### A. *Tax Assessment*

■ At the outset, the court finds that postpetition tax assessment by a municipality does not violate the automatic stay, provided for in § 362(a) of the Bankruptcy Code. *See Md. Nat. Bank v. Mayor & City Council of Baltimore*, 723 F.2d 1138 (4th Cir.1983).

Tax liability of the bankruptcy estate is predicated on the necessity of protection by the state or municipality. *See Swarts v. Hammer*, 194 U.S. 441, 24 S.Ct. 695, 48 L.Ed. 1060 (1904). Because the property still receives municipal services such as protection from vandalism and maintenance of streets and roads during the administration of the estate, assessment of real estate taxes is not stayed under section 362 of the Bankruptcy Code. *See In re Klefstad*, 95 B.R. 622, 625 n. 5 (Bankr.W.D.Wis.1988). To find otherwise would place too heavy a burden on each municipality, while permitting the debtor to enjoy the benefits of municipal services tax-free.

#### B. *Tax Lien Enforcement*

■ The City's tax liens "take precedence over all other claims on said real estate and shall continue in force until the taxes are paid or until said lien is otherwise terminated by law." 36 M.R.S.A. § 552 [tax lien]. Pursuant to 36 M.R.S.A. § 708, Maine law fixes April 1st as the date on which assessments are made. *Conn. Bank*

*& Trust Co. v. City of Westbrook*, 477 A.2d 269, 272 (Me.1984). A lien on real estate arises upon the date of assessment and is fully perfected from its inception. *In re Wallingford's Fruit House*, 30 B.R. 654, 655, 658 (Bankr.D.Me.1983).

A municipality may enforce and prevent the termination of its already fully perfected lien by complying with the requirements of 36 M.R.S.A. § 942 [Tax lien certificate; procedure] (Supp.1988).

> It provides in pertinent part that

> lien[s] on real estate created by section 552 [*supra.* ] ... may be enforced in the following manner.

> The tax collector may, after the expiration of 8 months and within one year after the date of original commitment of a tax, ... send by certified mail, return receipt requested ... a notice in writing ... alleging that a lien is claimed on the real estate to secure the payment of the tax, and demanding the payment of the tax within 30 days after ... mailing of the notice ...

> After the expiration of the 30 days and within 10 days thereafter, the tax collector shall record in the registry of deeds of the county ... where the real estate is situated a tax lien certificate ... alleg[ing] that a lien is claimed on the real estate to secure the payment of the tax ...

It is well-established that failure to follow strictly the time limitations contained in Maine's statutory scheme "will destroy the validity of the tax lien certificate and will prevent the town from acquiring title under the tax lien foreclosure procedures." *In re Wallingford's Fruit House*, 30 B.R. at 656 (*quoting Blaney v. Inhabitants of Shapleigh*, 455 A.2d 1381, 1387 (Me.1983)). However, it is also established that the filing of the sec. 942 lien certificate violates the automatic stay provision unless relieved from the stay.[3] *See In re Wallingford's Fruit House, supra.*

The court has applied these sometimes competing principles, relative to tax assessment and enforcement, to the facts of this proceeding. The court's conclusions depend primarily on whether the City has strictly complied with Maine law.

(1) Taxes Assessed on April 1, 1988.

■ The lien on the real estate arose and was fully perfected as of the date of assessment on April 1, 1988. According to the terms of sec. 942, the City need do nothing further to maintain perfection until after the expiration of 8 months and within one year from the date of assessment. As a result, the City was fully perfected as of November 23, 1988 when the property was sold.[4] For taxes assessed on April 1, 1988, the City holds a secured claim.

## II. Tax Assessments For Years Prior to 1988

Relative to assessments made prior to April 1, 1988, it is undisputed that the City failed to satisfy the timing requirements of sec. 942. For taxes assessed on April 1, 1987, the City had to commence the enforcement procedure of sec. 942 before April 1, 1988 or the lien was terminated.[5] No valid notice was given prior to April 1, 1988.

■ However, the City essentially argues that the imposition of the automatic stay had the effect of tolling or otherwise extending the timing requirements of sec. 942. Under the facts of this case, the court rejects such reasoning. Sec. 362(a) does not stay the running of any time period, including the timing requirements of 36 M.R.S.A. § 942. *See In re Thom, Inc.*, 95 B.R. 261, 263 (Bankr.D.Me.1989).

---

3. This court routinely relieves municipalities from the automatic stay to permit them to comply with 36 M.R.S.A. § 942.

4. On November 16, 1988, the City had obtained relief from stay, authorizing it to file § 942 tax lien certificates. However, as suggested in the text, when the property was sold, the lien was fully perfected by virtue of the assessment. The termination of the stay had no bearing on this finding.

5. The court is using the assessment made on April 1, 1987 also as an illustration. The same reasoning and conclusion holds for all pertinent assessments made prior to 1987.

No bankruptcy provision extended the applicable time limitations. Maine law controls, and the City had to strictly comply with the timing requirements of sec. 942. Having failed to do so, the lien terminated.

■ The City's claim is, however, entitled to an administrative expense priority for pre–1988 taxes, pursuant to section 507(a)(1) and section 503(b) of the Bankruptcy Code.

Sec. 507(a)(1) provides in pertinent part that

(a) The following expenses and claims have priority in the following order:

(1) First, administrative expenses allowed under section 503(b) of this title . . .

11 U.S.C. § 507(a)(1).

Section 503(b) of the Bankruptcy Code (referred to in sec. 507(a)(1)) provides in pertinent part that

After notice and a hearing, there shall be allowed administrative expenses . . . including—

\*   \*   \*   \*   \*   \*

[1](B) any tax—

(i) incurred by the estate, except a tax of a kind specified in section 507(a)(7) of this title . . .

\*   \*   \*   \*   \*   \*

11 U.S.C. § 503(b)(1)(B)(i).

The exception for taxes specified in sec. 507(a)(7) does not apply to the facts of this proceeding. Real estate taxes covered by sec. 507(a)(7) have been determined to include only those incurred pre-petition.[6] *See In re Mansfield Tire & Rubber Co.,* 85 B.R. 437, 442 (Bankr.N.D.Ohio 1987). As a result, the City is entitled to payment of the disputed real estate taxes as a first priority administrative expense, pursuant to sec. 507(a)(1).

### III.   Interest and Costs

The City also seeks to add interest and costs to the amount of the unpaid taxes.

(1) Taxes Assessed on April 1, 1988

■ Section 506(b) allows a holder of an oversecured claim to recover, in addition to the pre-petition amount of the claim, "interest on such claim, and any reasonable fees, costs, or charges provided for under the agreement under which such claim arose." *United States v. Ron Pair Enterprises, Inc.,* — U.S. —, 109 S.Ct. 1026, 103 L.Ed.2d 290, 18 BCD 1150, 1152 (1989) (*quoting in part,* 11 U.S.C. § 506(b). In *Ron Pair Enterprises,* the United States Supreme Court interpreted the language of sec. 506(b) as providing for postpetition interest, but not "fees, costs, or charges" to the holder of a nonconsensual lien, i.e. a judicial or statutory lienholder. *Id.,* 109 S.Ct. at 1029–31, 18 BCD at 1152–53. This court believes that the reasoning of the United States Supreme Court in *Ron Pair Enterprises* applies to this proceeding even though the City's secured claim arose postpetition. Therefore, on its secured claim, the City is awarded postpetition interest as its only added recovery, but not costs.

### (2) Tax Assessments For Years Prior to 1988

■ Section 503(b)(1)(C) accords administrative expense status to "any fine, penalty, or reduction in credit relating to a tax . . . [allowed as an administrative expense] . . . in subparagraph (B) [sec. 503(b)(1)(B) ] of this paragraph." 11 U.S.C. § 503(b)(1)(C). The Bankruptcy Code does not expressly provide for interest on postpetition taxes to be treated as an administrative expense, and the courts have split on the issue. *See* 3 *Collier on Bankrupt-*

---

**6.** The trustee relies on *United States v. Redmond,* 36 B.R. 932 (D.Kan.1984) for the proposition that postpetition claims were to be treated as pre-petition debts, entitled to seventh priority, pursuant to sec. 507(a)(7). Such reliance is misplaced. The reasoning in *Redmond* rested on the finding that confirmation vested all the property of the estate in the debtor and terminated administration of the estate by the trustee or debtor-in-possession. *Id.* at 934. In the case at bar, no plan was ever confirmed. Further sec. 348(d), which accords prepetition status to claims arising after the order for relief but before conversion, specifically excludes claims falling within sec. 503(b) from its operation. "Clearly then, section 348(d) does not operate to convert a debtor's Chapter 11 administrative expense into a pre-petition claim upon conversion." *In re Hotel Nevada Corp.,* 75 B.R. 174, 176 (Bankr.D.Nev.1987).

*cy* ¶ 503.04[c] (collecting cases). This court concludes that interest on postpetition taxes is allowable as an administrative expense pursuant to Section 503(b). *See United States v. Friendship College, Inc.,* 737 F.2d 430, 433 (4th Cir.1984); *In re General Polymerics Corp.,* 54 B.R. 523, 525–26 (Bankr.D.Conn.1985).

This court further concludes that the City is not entitled to costs. The one relevant discussion in the legislative history of sec. 503(b) states that "interest on tax liabilities and certain tax penalties incurred by the trustee are also included in this first priority." *In re General Polymerics Corp.,* 54 B.R. at 525–26 (*quoting* S.Rep. No. 989, 95th Cong., 2d Sess. 66, *reprinted in* 1978 U.S.Code Cong. & Admin.News 5787, 5852). Although "the only indication we have one way or the other suggests that interest should be first priority", *United States v. Friendship College, Inc.,* 737 F.2d at 433, no such indication appears to exist for costs. Therefore, on its unsecured claim, the City is entitled to postpetition interest, but not costs.

## CONCLUSION

For real estate taxes assessed on April 1, 1988, the City is entitled to payment as a secured creditor, plus interest. For taxes assessed prior to 1988, the City is entitled to payment as a first priority administrative expense, plus interest, pursuant to sec. 507(a)(1), as defined under sec. 503(b)(1)(B).

Counsel to submit an order which is in conformity with this opinion, including the computation of interest.