**TOWN OF SANFORD, et al., Plaintiffs,**

v.

**UNITED STATES of America, Defendant.**

**Civil No. 96–201–P–H.**

United States District Court,
D. Maine.

April 8, 1997.

William H. Dale, Jensen, Baird, Gardner & Henry, Portland, for Plaintiffs.

Jonathan A. Toof, Assistant U.S. Attorney, Portland, for Defendant.

### ORDER ON MOTIONS FOR SUMMARY JUDGMENT

HORNBY, Chief Judge.

This case involves a conflict between federal Government forfeitures of drug-related real estate and municipal tax collection procedures. I conclude that a municipality with a perfected lien on real estate for the collection of real estate taxes, whose officials have no knowledge of the illegal activities occurring on the real estate, qualifies as an "inno-

cent owner" under the federal forfeiture statute, 21 U.S.C. § 881(a)(7). It is therefore entitled to notice of the forfeiture proceeding so that it may assert its claim for taxes assessed before the forfeiture proceedings began. I GRANT summary judgment to the federal Government in this case, however, because of the manner in which the claim is brought forward.

## BACKGROUND

Charles and Dorothy Green owned real estate in the Town of Sanford. This real estate was used in connection with illegal drug transactions. These illegal acts occurred during 1991–92, but it is undisputed that officials of the Town of Sanford were unaware of them.

Under a Maine statute, all real estate taxes accrue and are assessed as of April 1 each year, and the tax year runs from April 1. *See* 36 M.R.S.A. § 502. On April 1, 1994, $1,306.82 in real estate taxes were assessed against the Greens' real estate in Sanford. The Town allowed taxpayers to pay in two equal installments, however, on September 14, 1994, and March 15, 1995.

On February 16, 1994, the United States filed forfeiture proceedings against the parcels in this court. *United States v. Certain Real Property Located at 43 Spruce Street,* No. 94–36 (D.Me.1994) (Carter, J.). It gave no notice to the Town of Sanford or its Tax Collector and it is undisputed that the Town and the Tax Collector were unaware of the proceedings. On September 22, 1994, the court issued a decree of forfeiture pursuant to a stipulation among those who were parties to the forfeiture proceeding. On September 29, 1994, judgment entered, forfeiting all the Greens' interest to the United States. *Id.*

On August 14, 1995, the Town, having received no tax payments, initiated proceedings under Maine statutes to enforce its tax lien against the real estate by filing a "tax lien mortgage certificate" in the Registry of Deeds. It was only after that action that it learned of the forfeiture. It thereupon re-

quested the Government to pay the 1994 taxes, but the Government declined.

The Town and Tax Collector have now filed this lawsuit against the Government. They assert jurisdiction under the Administrative Procedure Act ("APA"), 5 U.S.C. § 702, and under the Declaratory Judgment Act, 28 U.S.C. §§ 2201, 2202. They seek declarations that the Town's tax lien was valid and that the Government was obliged to give notice of the forfeiture proceedings to the Town so that the tax claims could be asserted before the forfeiture decree entered. They also seek to recover the 1994 taxes as well as attorney fees under the Equal Access to Justice Act, 28 U.S.C. § 2412.

## TAX AND FORFEITURE LAW

■ The merits of this dispute are the easiest part. Under Maine statutory law, if a Town has assessed taxes (as Sanford has done here), a perfected tax lien arises automatically on April 1 against the affected parcel. *See* 36 M.R.S.A. § 552; *See also Maddocks v. Stevens,* 89 Me. 336, 336, 36 A. 398 (1896); *Williams v. Hilton,* 35 Me. 547, 554 (1853). The federal bankruptcy court in this District has consistently recognized this principle. *See In re Martin,* 106 B.R. 334, 337 (Bankr.D.Me.1989) ("[Under Maine law, a] lien on real estate arises upon the date of assessment and is fully perfected from its inception."); *In re Wallingford's Fruit House,* 30 B.R. 654, 658 (Bankr.D.Me.1983) (same). As of April 1, therefore, the Town of Sanford had an ownership interest in the Greens' real estate, *i.e.,* it had a perfected lien, for the taxes already assessed for that year, $1,306.82, plus interest and costs. The United States would have me hold that this was only an "inchoate" lien because the Town permitted the taxes to be actually paid at a later date.[1] But the Town's decision to allow a landowner to have a period of time in which to pay does not affect the Town's status as a perfected lienholder.

Consequently, as an owner-an innocent owner-of an interest in the real estate, the Town of Sanford was entitled to receive no-

---

1. In fact, the first payment was due before the forfeiture decree entered.

tice of the filing of the forfeiture action.[2] It was also entitled to receive the entire year's taxes as a condition of giving up its perfected lien. It is true that a municipality may not tax the federal Government, see *McCulloch v. Maryland,* 17 U.S. (4 Wheat.) 316, 4 L.Ed. 579 (1819), but that is not the issue here. On April 1, the federal Government was not the owner of the real estate and the Town properly taxed the real estate given its then current ownership, and obtained the perfected lien now in dispute. Thus, the federal Government took the real estate subject to that lien claim at tile time it obtained the decree, just as it would if it had voluntarily purchased the property.

The Government makes much of the forfeiture statute's "relation back" provision, 21 U.S.C. § 881(h), and the related caselaw, arguing that its forfeiture decree vests title in it effective as of the illegal acts and that therefore no 1994 taxes can be due. That argument ignores the intervention of the statutory amendments in 1978 md 1984 creating the innocent owner defense.[3] *See also United States v. A Parcel of Land, Bldgs., Appurtenances, and Improvements, Known as 92 Buena Vista Ave.,* 507 U.S. 111, 128, 113 S.Ct. 1126, 1137, 122 L.Ed.2d 469 (1993)

("Because the success of any defense available under § 881(a) will necessarily determine whether § 881(h) applies, [the statute] must allow an assertion of the [innocent owner] defense *before* § 881(h) applies.").[4] Since the Town was an innocent owner, the relation back doctrine does not prevent it from realizing on its perfected tax lien. *Id.* at 129, 113 S.Ct. at 1137 (stating that the Government "cannot profit from" the statutory relation back provision "until the respondent has had the chance to invoke and offer . . . the innocent owner defense").

I conclude therefore that the United States was unjustified in failing to give the Town notice of the forfeiture proceeding and was unjustified in failing to pay the 1994 real estate taxes. These principles should have been sufficiently clear that in a proper case fees would have been awardable under the Equal Access to Justice Act.[5]

### PROCEDURAL AND JURISDICTIONAL ISSUES

■ Notwithstanding my conclusion on the merits, this i, not a "proper" case. The Town and Tax Collector have sued the United States under the APA, 5 U.S.C. § 702, but this is not a case where APA jurisdiction

---

2. The forfeiture statutes provides that "no property shall be forfeited under this paragraph, to the extent of an interest of an owner, by reason of any act or omission established by that owner to have been committed or omitted without the knowledge or consent of that owner." 21 U.S.C. § 881(a)(7) (Supp.1996). Although the statute contains no express notice requirement, "the Due Process Clause of the Fifth Amendment prohibits the Government in a civil forfeiture case from seizing real property without first affording the or, net notice and opportunity to be heard." *United States v. James Daniel Good Real Property,* 510 U.S. 43, 46, 114 S.Ct. 492, 497, 126 L.Ed.2d 490 (1993).

This case is unlike *United States v. 7.6 Acres of Land on Chapel Road,* 907 F.Supp. 782 (D.Vt. 1995), where the innocent owner defense did not apply because the taxes were based on the illegal conduct itself. I decline to follow that case's dictum that a lienholder is not an owner under the statute, that would eliminate all mortgagees in lien-theory states.

3. The federal forfeiture statute contains two innocent owner defense provisions, 21 U.S.C. §§ 881(a)(6) and (7). Subsection (a)(6), passed in 1978, applies to "monies, negotiable instruments or other things of value" while subsection

(a)(7), added in 1984, applies to "real property." *Id.* Although they apply in different circumstances, the language of the defenses is practically identical. Since this is a forfeiture of real property, only subsection (a)(7) is applicable.

4. Although *92 Buena Vista Ave.* involved the innocent owner defense under § 881(a)(6), the provision's wording is virtually identical to the wording of the defense under § 881(a)(7) and there is no reason to believe the provisions would receive different treatment on this issue. *See supra* note 3.

5. The Town cites a November 3, 1994, Department of Justice memorandum in support of its claim for attorney fees under the EAJA. *See* Dep't of Justice Directive No. 93–6 (Nov. 3, 1994) (hereinafter "Directive"). The Town maintains that this Directive creates a DOJ policy directing the Government to pay taxes due on property forfeited pursuant to § 881(a) where innocent owner status is established. The Government, on the other hand, interprets the Directive to support its position that payment of the taxes was not appropriate in this case. Although I think the Town has the better of the interpretation argument, the Directive does not create enforceable rights.

exists. The Government failed to give the Town notice of a forfeiture lawsuit and declined to pay real estate taxes, but those actions are not a rulemaking, adjudicative or other type of final agency action subject to judicial review under the APA.[6] *See id.* §§ 702, 704 (describing the right of judicial review under the APA).

▉ The Town also seeks relief under the Declaratory Judgment Act, 28 U.S.C. §§ 2201, 2202. That statute, however, will not alone confer jurisdiction. *See Skelly Oil Co. v. Phillips Petroleum Co.,* 339 U.S. 667, 671, 70 S.Ct. 876, 879, 94 L.Ed. 1194 (1950) (" '[T]he operation of the Declaratory Judgment Act is procedural only.' Congress enlarged the range of remedies available in the federal courts but did not extend their jurisdiction." (quoting *Aetna Life Ins. Co. v. Haworth,* 300 U.S. 227, 240, 57 S.Ct. 461, 463, 81 L.Ed. 617 (1937)). Instead, an independent ground of federal jurisdiction must exist before declaratory relief can be requested. There appears to be none here. Moreover, the Town has not made a persuasive case for declaratory relief. What it really seeks are the 1994 taxes. It shows no likelihood that it has other drug-related properties in the Town that require the benefit of a declaration. Although it says that it would like the notice principle established for The benefit of all Maine municipalities, this lawsuit is not a class action, and I see no reason to grant such declaratory relief against the federal Government; the precedent should suffice.

At oral argument I suggested that possible ways to overcome these jurisdictional issues were a motion to reopen the forfeiture decree under Fed.R.Civ.P. 60(b) or an action under 28 U.S.C. § 1655. *See* Tr. of Oral Argument (Feb. 19, 1997), at 23. The Town declines both avenues, however, claiming that it was not a party and therefore has no standing under Rule 60(b) and that as a lienholder (and for other reasons) it is not entitled to proceed under the statute. It may well be right as to the statute, although as to Rule 60(b) it seems to me that the rule ought to be broad enough to afford relief since the Town certainly qualified to intervene as of right had it received notice. *See United States v. Estevez,* 845 F.2d 1409, 1411 (7th Cir.1988) ("[T]he Government agrees that the provisions of Rule 60(b) of the Federal Rules of Civil Procedure are available to a third-party claimant seeking to vacate the final judgment of forfeiture.") But this is a civil case and I leave the parties to make their own arguments.

▉ What does seem apparent and follows from the forfeiture/tax lien analysis is that in the absence of notice to the Town, the decree of forfeiture did not operate to divest the Town's perfected tax lien and that the Town could therefore have proceeded to foreclose on its tax lien notwithstanding the forfeiture decree. Here, however, the Town runs into still another hurdle: in an effort to accommodate the Government's later efforts to sell the property, the Town ultimately discharged its tax lien mortgage.[7] Although the Town has submitted lawyers' correspondence showing that it wished to preserve its right to litigate the forfeiture issue and although for purposes of the summary judgment motion, I take as correct the Town's assertion that no one paid any money to get the tax lien mortgage discharged, Maine statutes are

---

6. The APA makes judicial review available for a "final agency action for which there is no other adequate remedy in a court." 5 U.S.C. § 704. The Supreme Court has recently described a "final agency action" as "the consummation of the agency's decisionmaking process ... by which rights or obligations have been determined or from which legal consequences will flow." *Bennett v. Spear,* 117 S.Ct. 1154, 1168 (1997) (internal quotations and citations omitted) The Government's decision to refuse to pay the taxes to the Town was not, however, an "agency action" within the meaning of the APA. While it is true that the Department of Justice is an "agency," and that it was "acting," the Government was not conducting a proceeding to determine the Town's entitlement to the taxes. Thus, this court is not reviewing an "agency action," but rather is deciding de novo whether the Town may recover the 1994 taxes from the Government. This is a decision for a court in which no deference is given to the Government's refusal to pay.

7. I note that the discharge was not entirely a selfless gesture by the Town. If the property is sold to a private owner, it goes back on to the tax rolls for the Town, whereas if the Government still owned it on a succeeding April 1, no taxes could be collected for that subsequent tax year, since the federal Government is immune from direct taxation.

clear that if the mortgage has been discharged, there is, nothing to foreclose. *See* 36 M.R.S.A. §§ 942, 943. Moreover, the Maine caselaw makes municipalities turn square corners in this process. *See, e.g., e.g., Blaney v. Inhabitants of the Town of Shapleigh,* 455 A.2d 1381, 1387 (Me.1983) ("Failure to follow strictly the statutorily delineated requirements will destroy the validity of the tax lien certificate and will prevent the town from acquiring title under the tax lien foreclosure procedures."). The Town is therefore unable to foreclose.

### CONCLUSION

This is not a tidy package. The United States should have paid the 1994 taxes to the Town of Sanford, and should have given the Town notice of the forfeiture proceeding, and the Town should not have had to sue to establish these principles. But the steps taken by the Town, although economically sound for the future of its tax rolls, do not permit me to actually award the relief it seeks, including the attorney fees. Perhaps the Town should be content with having established these principles for future cases, thereby benefitting both itself and other municipalities in similar circumstances.

The Government's motion for summary judgment is GRANTED and the Town's motion is DENIED. No costs.

So ORDERED.